**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KEYLA D. BELL, Individually and On Behalf
of All Others Similarly Situated,

                           Plaintiff,

                   v.

KANZHUN LIMITED, PENG ZHAO, YU
ZHANG, XU CHEN, and TAO ZHANG,

                       Defendants.

     :  2:21-cv-13543-KM-MAH

     :  **ECF Case**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT KANZHUN LIMITED'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE**

SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
(A Delaware Limited Liability
Partnership)

Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, New York 10001
(212) 735-3000

*Attorneys for Defendant Kanzhun Limited*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................1

ARGUMENT........................................................................................................2

I.      PLAINTIFF'S MOTION IS PROCEDURALLY IMPROPER ....................4

II.     ALL CHALLENGED EXHIBITS ARE JUDICIALLY
        NOTICEABLE ............................................................................................5

III.    ALL CHALLENGED EXHIBITS ARE INTEGRAL TO THE
        COMPLAINT ............................................................................................12

CONCLUSION ...................................................................................................15

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re Anadigics, Inc., Securities Litigation*,
   Civil Action No. 08-5572 (MLC), 2011 WL 4594845 (D.N.J. Sept.
   30, 2011) , *aff'd*, 484 F. App'x 742 (3d Cir. 2012)........................................4

*In re Astea International Inc. Securities Litigation*,
   Civil Action No. 06-1467, 2007 WL 2306586
   (E.D. Pa. Aug. 9, 2007)....................................................................2, 3, 7

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988).......................................................................14

*Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital
   Management L.P.*,
   435 F.3d 396 (3d Cir. 2006).................................................................8

*In re Burlington Coat Factory Securities Litigation*,
   114 F.3d 1410 (3d Cir. 1997)...........................................................11, 13

*FDIC v. National Union Fire Insurance Co. of Pittsburgh*,
   146 F. Supp. 2d 541 (D.N.J. 2001), *aff'd* 57 F. App'x 965 (3d Cir.
   2003) ......................................................................................9, 10

*Furnari v. Warden, Allenwood Federal Correctional Institute*,
   218 F.3d 250 (3d Cir. 2000)................................................................6

*Gardner v. Collector of Customs*,
   73 U.S. 499 (1867)......................................................................6, 11

*Gresko v. Pemberton Township Board of Education*,
   No. 1:19-cv-00638 (NLH)(KMW), 2020 WL 6042317 (D.N.J. Oct.
   13, 2020)....................................................................................4

*Ieradi v. Mylan Laboratories, Inc.*,
   230 F.3d 594 (3d Cir. 2000)................................................................5

*In re Intelligroup Securities Litigation*,
   527 F. Supp. 2d 262 (D.N.J. 2007)......................................................6, 10

*J/H Real Estate Inc. v. Abramson*,
    901 F. Supp. 952 (E.D. Pa. 1995)......................................................................7

*Kaul v. Christie*,
    372 F. Supp. 3d 206 (D.N.J. 2019)..............................................................6, 12

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018)....................................................................7, 11

*In re LDK Solar Securities Litigation*,
    584 F. Supp. 2d 1230 (N.D. Cal. 2008).........................................................11

*In re Merck Co., Securities, Derivative & "Erisa" Litigation*,
    Civil Action Nos. 05-1151 (SRC), 05-2367 (SRC), 2006 WL 8460903
    (D.N.J. Jan. 20, 2006) ...................................................................................5

*In re Resolute Energy Corp. Securities Litigation*,
    No. 21-1412, 2022 WL 260059 (3d Cir. Jan. 27, 2022) .............................10

*In re Schering-Plough Corp./Enhance Securities Litigation*,
    Civil Action No. 08-CV-397 (DMC), 2009 WL 1410961 (D.N.J. May
    19, 2009)........................................................................................................4

*In re UBS AG Securities Litigation*, No. 07 Civ. 11225 (RJS), 2012 WL
    4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac*
    *Policemen's & Firemen's Retirement System v. UBS AG*, 752 F.3d
    173 (2d Cir. 2014)..........................................................................................9

*University Spine Center v. Aetna Inc.*,
    Civ. No. 17-8160 (KM), 2018 WL 1409796 (D.N.J. Mar. 20, 2018)...........14

## OTHER AUTHORITIES

Fed. R. Civ. P. 44.1...................................................................................................6, 12

Fed. R. Evid. 201(b)........................................................................................................5

Defendant Kanzhun Limited ("Kanzhun" or the "Company")[1] respectfully submits this memorandum of law in opposition to Plaintiff's Motion to Strike (ECF No. 27, the "Motion to Strike" or "MTS").

## PRELIMINARY STATEMENT

In an attempt to avoid inconvenient facts confirming that her Complaint fails to state a claim as a matter of law, Plaintiff brings this procedurally improper Motion to Strike 15 Exhibits attached to Defendant's Motion to Dismiss (the "Challenged Exhibits")—consisting of (i) newspaper articles, (ii) official notices and announcements of a Chinese government administrative agency and (iii) Chinese laws and regulations—all of which are routinely considered in connection with motions to dismiss federal securities claims. For at least three independent reasons, Plaintiff's Motion to Strike should be denied.

First, Plaintiff's Motion is procedurally improper. The Federal Rules of Civil Procedure do not permit a party to move to strike materials attached to a motion to dismiss. Rather, Plaintiff should have responded in her Opposition to the Motion to Dismiss, which was filed on June 20, 2022.

---

[1]  Capitalized terms not defined herein have the meanings ascribed to them in the Memorandum of Law in Support of Defendant's Motion to Dismiss ("Motion to Dismiss" or "MTD"). "Opposition" or "MTD Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss. All citations and internal quotations marks are omitted, and all emphases in quotations are added, unless otherwise indicated.

Second, Plaintiff's sole basis for her Motion—that none of the Challenged Exhibits is "integral" to the Complaint—ignores well-established Third Circuit precedent demonstrating that all of the Challenged Exhibits are proper subjects of judicial notice, regardless of whether they are integral to the Complaint. Where, as here, Defendant does not offer such Exhibits for the truth of their contents, the Exhibits may properly be considered on a motion to dismiss.

Third, the Challenged Exhibits *are*, in any case, integral to the Complaint. Not only are some Exhibits referenced in the Complaint, but several other Exhibits also go to the claim at the heart of Plaintiff's case—*i.e.*, whether the Cyberspace Administration of China's ("CAC") May 21, 2021 Announcement naming Dianzhang and 104 other apps was known to the public at the time of Kanzhun's IPO.

For these reasons, as explained further below, Plaintiff's Motion to Strike should be denied.

## **ARGUMENT**

As Plaintiff's own cases make clear, "[w]hen ruling on a motion to dismiss, courts typically make their decisions based on the allegations contained in the complaint, exhibits attached to the complaint and matters of public record. Further, under Federal Rule of Evidence 201, courts may take judicial notice of a fact not subject to reasonable dispute that is capable of accurate and ready determination by

resort to a source whose accuracy cannot be reasonably questioned." *In re Astea Int'l Inc. Sec. Litig.*, Civil Action No. 06-1467, 2007 WL 2306586, at *8 (E.D. Pa. Aug. 9, 2007). Although, other than the above-mentioned sources, a district court generally "may not consider matters extraneous to the pleadings," "[a] limited exception" is that "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *Id.* (second alteration in original).

Plaintiff moves to strike 15 exhibits, including newspaper articles, official announcements of the Cyberspace Administration of China ("CAC") that are available on the Chinese government agency's official website, and draft and final versions of Chinese laws and regulations published by China's legislature:

| EXHIBIT | DESCRIPTION |
| --- | --- |
| Exhibit C | *China's Internet Controls Will Get Stricter, to Dismay of Foreign Business*, The New York Times, Nov. 7, 2016 |
| Exhibit E | CAC Notification on the Illegal Collection and Use of Personal Information by 33 Types of Apps, May 1, 2021 |
| Exhibit F | CAC Announcement on the Illegal Collection and Use of Personal Information by 84 Apps, May 10, 2021 |
| Exhibit H | CAC Notification on the Illegal Collection and Use of Personal Information by 129 Apps, June 11, 2022 |
| Exhibit I | *China authorities name 105 apps for improper data practices*, Associated Press, May 21, 2021 |
| Exhibit J | *China's internet watchdog finds 33 mobile apps broke data privacy rules,* Reuters, May 3, 2021 |
| Exhibit L | *China's Cybersecurity Reviews Eye 'Supply Chain Security' in 'Critical' Industries,* New America, Apr. 27, 2020 |
| Exhibit M | Data Security Law of the People's Republic of China, June 10, 2021 |

3

| Exhibit N | Public Announcement from Cybersecurity Review Office Regarding Activation of Cybersecurity Review of "Didi Travel," July 2, 2021 |
|---|---|
| Exhibit O | *China targets more tech groups after Didi crackdown,* Financial Times, July 6, 2021 |
| Exhibit P | CAC Report on Removal of the "Didi Travel" App, July 4, 2021 |
| Exhibit Q | CAC Report on Removal of 25 Apps Including "Didi Enterprise Edition," July 9, 2021 |
| Exhibit T | *Not just Didi: China's Internet watchdog targets more U.S.-listed firms for 'national security' review,* Fortune, July 5, 2021 |
| Exhibit V | Notice of Cybersecurity Administration of China on Seeking Public Comments on the Cybersecurity Review Measures (Draft Revision for Comment), dated July 10, 2021 |
| Exhibit W | Cybersecurity Review Measures, dated December 28, 2021 |

## I. PLAINTIFF'S MOTION IS PROCEDURALLY IMPROPER

As a threshold matter, Plaintiff's Motion to Strike should be denied because it is procedurally improper. Federal Rule of Civil Procedure 12(f) permits a party to move to strike material from a ***pleading***, but the Rule "makes no provision for materials attached to, for example, motions to dismiss."[2] *In re Schering-Plough Corp./Enhance Sec. Litig.*, Civil Action No. 08-CV-397 (DMC), 2009 WL 1410961, at \*2 (D.N.J. May 19, 2009). Accordingly, courts in this District routinely deny motions to strike exhibits appended to a motion to dismiss as procedurally improper. *See id.* (denying plaintiffs' motion to strike exhibits to defendants' motion to dismiss as "procedurally incorrect"); *In re Anadigics, Inc., Sec. Litig.*, Civil Action No. 08-

---

[2] Plaintiff does not provide a valid basis for her motion to strike, relying only on *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997), which did not even involve a motion to strike. (MTS at 2.)

4

5572 (MLC), 2011 WL 4594845, at *12 (D.N.J. Sept. 30, 2011) (denying plaintiffs' motion to strike exhibits and appendices to defendants' motion to dismiss as "procedurally improper"), *aff'd*, 484 F. App'x 742 (3d Cir. 2012); *Gresko v. Pemberton Twp. Bd. of Educ.*, No. 1:19-cv-00638 (NLH)(KMW), 2020 WL 6042317, at *3 (D.N.J. Oct. 13, 2020) (denying plaintiffs' motion to strike exhibits to defendant's brief and noting "[n]umerous other courts in this district have similarly reached the conclusion that a motion to strike another party's motion, supporting brief, or exhibits attached to a motion is procedurally improper").

Plaintiff seeks to strike Defendant's Exhibits C, E, F, H, I, J, L, M, N, O, P, Q, T, V and W, all of which are attached to Defendant's Motion to Dismiss. Plaintiff's Motion to Strike is therefore procedurally improper and should be denied.

## II.    ALL CHALLENGED EXHIBITS ARE JUDICIALLY NOTICEABLE

Plaintiff's Motion to Strike should also be denied in its entirety because all of the Challenged Exhibits are subject to judicial notice, as they concern matters that are "not subject to reasonable dispute" that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Specifically, Plaintiff challenges (i) newspaper articles (Exs. C, I, J, L, O and T); (ii) official CAC announcements available on the administrative agency's official website (Exs. E, F, H, N, P and Q); and (iii) Chinese laws or regulations (Exs. M, V and W).

5

With respect to the newspaper articles—Exhibits C, I, J, L, O, and T—the Third Circuit has specifically held, and Plaintiff does not dispute, that courts "may take judicial notice of newspaper articles." *Ieradi v. Mylan Lab'ys, Inc.*, 230 F.3d 594, 598 n.2 (3d Cir. 2000); *see also In re Merck Co., Sec., Derivative & "Erisa" Litig.*, Civil Action Nos. 05-1151 (SRC), 05-2367 (SRC), 2006 WL 8460903, at *5 (D.N.J. Jan. 20, 2006) ("Law in the Third Circuit has recently crystalized which permits judicial notice of the newspaper articles submitted by Defendants").

The Third Circuit has also held that "it is proper for [courts] to take judicial notice of decisions of an administrative agency," such as the CAC Announcements at issue here—Exhibits E, F, H, N, P and Q. *Furnari v. Warden, Allenwood Fed. Corr. Inst.*, 218 F.3d 250, 255 (3d Cir. 2000); *see also In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 274 (D.N.J. 2007) (courts may take judicial notice of "records and reports of administrative bodies, such as notices and opinion letters" in securities fraud class action); *Kaul v. Christie*, 372 F. Supp. 3d 206, 229 (D.N.J. 2019) (McNulty, J.) (taking judicial notice of administrative records).

Finally, it is black-letter law that courts may take judicial notice of legislation, including the laws and regulations produced by Defendant as Exhibits M, V and W. *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, . . .whether or not submitted by a party or admissible under the Federal Rules of Evidence."); *Gardner v. Collector of Customs*, 73 U.S.

6

499, 509 (1867) ("[C]ourts should take judicial notice of public statutes").

To the extent Plaintiff argues that judicial notice requires "that the plaintiff's complaint . . . necessarily rely on that document," (MTS at 5), her own cases **confirm** that she improperly conflates different exceptions to the general rule against considering documents extraneous to the complaint. Specifically, Plaintiff improperly seeks to apply the standards applicable to *matters of public record* or *documents integral to the complaint*, which require that the document be referenced by or integral to the Complaint, to matters that are the proper subjects of *judicial notice*, which is separately governed by Federal Rule of Evidence 201. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (The "incorporation-by-reference doctrine, and judicial notice . . . permit district courts to consider materials outside a complaint, but each does so for **different reasons and in different ways**."); *Astea*, 2007 WL 2306586, at *8 (courts may consider "exhibits attached to the complaint and matters of public record" and "**[f]urther, under Federal Rule of Evidence 201**, courts may take judicial notice of a fact not subject to reasonable dispute"); *J/H Real Est. Inc. v. Abramson*, 901 F. Supp. 952, 955 n.3 (E.D. Pa. 1995) ("A public record . . . includes criminal case dispositions, letter decisions of government agencies, and published reports of administrative bodies. The court **may also consider** matters of which judicial notice may be taken under Fed. R. Evid. 201."). Plaintiff cites no case holding that judicial notice requires

7

plaintiff's reliance on the document.  Rather, the Third Circuit has held that with respect to matters subject to judicial notice, "*[w]hether [plaintiff] read the [documents] or were aware of them is immaterial*.  They serve only to indicate what was in the public realm at the time, not whether the contents of those [documents] were in fact true." *Benak ex rel. All. Premier Growth Fund v. All. Cap. Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006), *aff'g* 349 F. Supp. 2d 882 (D.N.J. 2004) (affirming dismissal of securities fraud complaint).  Hence, regardless of whether any of the Challenged Exhibits is referenced by or integral to the Complaint, they are all properly subject to judicial notice at the pleading stage.

Judicial notice of the Challenged Exhibits is proper for the additional reason that, contrary to Plaintiff's conclusory and unsupported assertions, (MTS at 3), Defendant does not cite any of these Exhibits for the truth of their contents, but "only to indicate what was in the public realm at the time." *Benak*, 435 F.3d at 401 n.15.

First, five of the Challenged Exhibits (Exs. E, F, H, I and J) were cited to establish that the ***precise*** information Plaintiff alleges was omitted from Kanzhun's disclosure was already publicly known—*i.e.*, cited not for the truth of the information, but merely for its existence in the public domain.  Specifically, Defendant cited Exhibits I (*AP News* article) and J (*Reuters* article) to show the public's awareness of the CAC's market-wide enforcement campaign that was launched immediately after new Chinese data privacy regulations went into effect

on May 1, 2021.[3] (MTD at 11.)  In fact, Exhibit I reported on the **precise** May 21

Announcement that Plaintiff alleges was omitted from Kanzhun's disclosures.  (Ex.

I.)  The other three (Exhibits E, F, and H) were also publicly available, and were

cited for their existence in the public realm.  (MTD at 10–11.)  Because Defendant

only cited these Exhibits to show what information was publicly available at the time

of Kanzhun's IPO, they are subject to judicial notice.

Second, Plaintiff argues that Defendant cited two news articles (Exs. O, T),

three CAC Announcements (Exs. N, P and Q), and three laws or regulations (Exs.

M, V and W) to refute Plaintiff's theory of loss causation and "spin a concededly

speculative story in which the corrective disclosure revealing that the CAC had

launched an expanded review of Kanzhun's entire business might relate to a separate

post-Class Period governmental action to prevent Chinese tech companies from

providing data to the U.S." (MTS at 8.)  Plaintiff mischaracterizes the Motion to

Dismiss.  Defendant does not ask the Court to accept as true commentators' theories

relayed in the *Financial Times* and *Fortune* articles (Exhibits O and T) regarding the

---

[3]  Courts may take judicial notice of widely-known market- or industry-wide events. *See, e.g.*, *FDIC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 146 F. Supp. 2d 541, 544 n.5 (D.N.J. 2001) ("[T]he Court takes judicial notice of the fact that the late 1980's and early 1990's was a time in history when the bottom fell out of the real estate market."), *aff'd.* 57 F. App'x 965 (3d Cir. 2003); *In re UBS AG Sec. Litig.*, No. 07 Civ. 11225 (RJS), 2012 WL 4471265, at *21 (S.D.N.Y. Sept. 28, 2012) (taking notice of "a market-wide downturn impacting [defendants'] various businesses"), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014).

possible motivations for the CAC's actions.  Nor does it ask the Court to accept as true the CAC's findings and statements contained in the July 2021 Announcements produced as Exhibits N, P and Q.[4]  Rather, Defendant cites these documents to show that, at the time of the alleged "corrective disclosure," it was public knowledge the CAC was cracking down on Chinese technology companies that had recently conducted U.S. IPOs (MTD at 17–18)—an industry-wide event that negatively impacted not just Kanzhun's share price, but also the share prices of other similarly situated U.S.-listed Chinese companies.  (*Id.* at 38–39.)  The impact of this market-wide event on share prices is a proper subject of judicial notice.  *See In re Resolute Energy Corp. Sec. Litig.*, No. 21-1412, 2022 WL 260059, at *2 n.7 (3d Cir. Jan. 27, 2022) (taking judicial notice of stock prices reflected in *Reuters* article); *Intelligroup*, 527 F. Supp. 2d at 273 (taking judicial notice of "stock price data compiled by [a reliable financial] news service" (alteration in original)); *FDIC*, 146 F. Supp. 2d at 544 n.5 (taking judicial notice of drop in real estate market).  Tellingly, far from pointing to any disputable fact contained in these Exhibits, Plaintiff's Opposition ***admits*** to the existence of the "industry-wide" crackdown and cites Exhibits N, P and Q in support of her arguments.  (MTD Opp. at 23–24.)  Although,

---

4  Exhibits N, P and Q are three CAC Announcements regarding various apps run by DiDi Global Inc., which, along with BOSS Zhipin and two other apps owned by another company, (Ex. R), were the targets of the CAC's July 2021 crackdown and the subjects of the aforementioned *Financial Times* and *Fortune* articles (among other news reports).

as Defendant will explain in its Reply Brief, Plaintiff's arguments fail to salvage her claim from dismissal, her reliance on these facts **confirms** that these Exhibits are properly before this Court.

Plaintiff also does not (because she cannot) dispute any fact for which Exhibits M (China's Data Security Law), V (Draft Revisions to China's Cybersecurity Review Measures offered for public comment) or W (China's 2021 Cybersecurity Review Measures) were offered. Specifically, Defendant cited these draft and final legislation and regulations merely for the fact of their existence, the date of their release or enactment, and their scope (MTD at 15, 18–19), all of which are proper subjects of judicial notice. *Gardner*, 73 U.S. at 509 ("The judicial notice of the court must extend, not only to the existence of the statute, but to the time at which it takes effect, and to its true construction.").[5]

Finally, none the remaining Challenged Exhibits was cited for the truth of its contents. Exhibit C (*New York Times* article) and Exhibit L (*New America* article),

---

[5]    Plaintiff's cases are inapposite, (MTS at 8–9), as they either relate to the separate standard applicable to documents integral to the complaint, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002–03 (9th Cir. 2018), or merely hold that a court "may not take judicial notice of a fact that is subject to reasonable dispute." *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1254 (N.D. Cal. 2008). Plaintiff does not dispute any fact for which these Exhibits were offered. Rather, she takes issue that these **undisputed** and judicially noticeable facts undermine her theory of causation. (MTS at 9.)

11

like the Company's disclosures, were cited to show what was known to the public regarding the Cybersecurity Law and 2020 Cybersecurity Review Measures, respectively, not to establish the ambiguity of these laws. (MTD at 7–8.) Rather, as explained in the Motion to Dismiss, such ambiguity is apparent on the face of such laws, which Plaintiff does not dispute are integral to the Complaint.[6] (*Id.* at 8–13.)

Because all of the Challenged Exhibits are subject to judicial notice, Plaintiff's Motion to Strike should be denied.

## III.   ALL CHALLENGED EXHIBITS ARE INTEGRAL TO THE COMPLAINT

In any event, Plaintiff's Motion to Strike fails for the separate and independent reason that all of the Challenged Exhibits are integral to the Complaint. *See Kaul*, 372 F. Supp. 3d at 229–30 (McNulty, J.) (finding exhibits subject to judicial notice *and*, separately, integral to the complaint). "The rationale underlying this exception [for documents integral to the complaint] is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated [w]here plaintiff has actual notice . . .  and has relied upon these

---

[6]   Plaintiff's assertion that "[w]hether the Cybersecurity Law . . . is ambiguous is a question not suitable for determination on a motion to dismiss" is both incorrect and irrelevant. (MTS at 8.) Determinations of foreign law "must be treated as a ruling on a ***question of law***," which is properly considered on a motion to dismiss. Fed. R. Civ. P. 44.1. In any event, Plaintiff cannot dispute that the public was aware of the ambiguities in these laws, as such ambiguities were repeatedly disclosed in the Company's SEC filings. (MTD at 7–8, 13–15.)

12

documents in framing the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (second and third alterations in original) (citation omitted). "[W]hat is critical is whether the claims in the complaint are '***based***' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Id.*

The central claim at the heart of the Complaint is that Kanzhun failed to disclose that on May 21, 2021, the CAC found that its Dianzhang app, along with 104 other apps, had "issues" relating to data collection and ordered those apps to rectify within 15 business days. As explained above (*supra* § II), Exhibits I and J (two newspaper articles discussing the CAC's May 2021 actions) and Exhibits E, F and H (three public announcements by the CAC announcing similar "issues" in data collection with respect to hundreds of other apps) were cited to establish the public's awareness of the ***precise*** information on which Plaintiff's omission claim is "based." Indeed, Exhibit I reported on the ***same*** May 21 Announcement she claims was withheld from investors. Moreover, given that these facts were not only publicly available on the CAC's website (Exs. E–H), but were reported by widely-known sources including *AP* (Ex. I) and *Reuters* (Ex. J), it is clear that Plaintiff had "actual notice" of these documents. *Burlington*, 114 F.3d at 1426. Because "Plaintiff[] cannot prevent a court from looking at the texts of the documents on which [her] claim is based by failing to attach or explicitly cite them," the Court should consider

13

Exhibits E, F, H, I and J as documents integral to the Complaint.[7]  *Id.*

Similarly, Exhibits N–Q and T are integral to Plaintiff's loss causation claim, as they demonstrate that Plaintiff's loss coincided with the July 2021 industry-wide crackdown on U.S.-listed Chinese technology companies for which these Exhibits are cited.  Far from denying that she had "actual notice" of this highly publicized crackdown, Plaintiff's Opposition not only **admits** that the crackdown took place, but actually **cites** Exhibits N, P and Q in support of her arguments.  (MTD Opp. at 23–24.)  *See Univ. Spine Ctr. v. Aetna Inc.*, Civ. No. 17-8160 (KM), 2018 WL 1409796, at *4 (D.N.J. Mar. 20, 2018) ("For obvious reasons," a party cannot object to court's consideration of document that it relied upon "as a defense.")  Hence, these Exhibits, too, are integral to her claim.

Finally, the Complaint discusses at length China's legislative and regulatory history with respect to data security and cybersecurity.  (AC ¶¶ 32–43.)  In fact, the Complaint *explicitly* references China's Cybersecurity Review Measures, first published in 2020, (AC ¶ 39), which China's legislature revised through Exhibit V (subject to a notice and comment period) and Exhibit W (the final revision published

---

[7]  Because Plaintiff's claim is premised on the absence of the allegedly omitted information in the market, and because the Complaint assumes that "Kanzhun's ADSs were traded in efficient markets during the Class Period," (AC ¶ 76), the Complaint is necessarily "based" on all publicly available information relating to the alleged omission, including Exhibits I, J, E, F and H.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 246-47 (1988).  Hence, these Exhibits are integral to the Complaint.

14

in 2021).  Exhibits M, V and W, which all relate to the legislative history of China's data security and cybersecurity laws, are also integral to the Complaint.[8]

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Strike should be denied.

Dated: July 5, 2022

Respectfully submitted,

/s/ Scott D. Musoff
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone:     (212) 735-3000
Facsimile:     (212) 735-2000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com

*Attorneys for Defendant Kanzhun
Limited*

---

[8]  Despite Plaintiff's repeated assertion that these laws and regulations were issued after the Class Period, (MTS at 7–8), China's Data Security Law, produced as Exhibit M, was published on June 10, 2021, nearly a month before the end of the Class Period.  Similarly, Plaintiff's assertion that the CAC actions related to DiDi constituted "a separate post-Class Period government action" ignores that the first CAC action against DiDi was initiated on July 2, 2021, the last day of the Class Period.  That subsequent actions post-dated the Class Period is irrelevant, as timing of the actions, which occurred within a single week, support the fact, already admitted by Plaintiff, that these CAC announcements, together with the action against BOSS Zhipin and two other apps, constituted an "industry-wide" crackdown.  (MTD Opp. at 23.)

15

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically with the United States District Court for the District of New Jersey through the Court's ECF System on this date. The Notice of Electronic Filing constitutes service on all parties under Rule 14(b)(1) of this Court's ECF Policies and Procedures listed in Local Civil Rule 5.2.

Dated: July 5, 2022

/s/ Scott D. Musoff
Scott D. Musoff

16