# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEYLA D. BELL, Individually and on behalf of all others similarly situated, | Case No: 2:21-cv-13543-KM-MAH |
| Plaintiff, | CLASS ACTION |
| v. | Motion Day: March 1, 2023 |
| KANZHUN LIMITED, PENG ZHAO, YU ZHANG, XU CHEN, and TAO ZHANG, | Hon. Kevin McNulty |
| Defendants. | |

# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL
## APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.  INTRODUCTION ....................................................................................... 1

II.  STANDARDS GOVERNING APPROVAL OF CLASS
     ACTION SETTLEMENTS ........................................................................ 3

III.  THE SETTLEMENT IS FAIR, REASONABLE, AND
      ADEQUATE............................................................................................ 5

     A.  The Court Should Grant Final Approval of the Settlement ................ 5

         1.  Lead Plaintiff and Lead Counsel Adequately
             Represented the Class ..................................................... 6

         2.  The Settlement was the Result of Arm's-Length
             Negotiations Between Experienced Counsel ........................... 8

     B.  The Settlement is Substantively Fair: The Relief
         Provided for the Settlement Class is Adequate in Light of
         the Risks, Costs, and Delay of Continued Litigation........................ 11

         1.  The Complexity, Expense, and Likely Duration of
             the Litigation ............................................................ 11

         2.  Risks to Proving Liability and Damages ............................... 13

         3.  Risks of Class Certification ................................................... 16

     C.  The Settlement Amount is Within the Range of
         Reasonableness in Light of the Best Possible Recovery
         and Attendant Risks of Litigation ...................................... 16

     D.  The Settlement Class's Reaction to the Settlement
         Supports Final Approval ........................................................ 19

     E.  The Settlement Satisfies the Remaining Rule 23(e)(2)
         Factors ........................................................................ 21

         1.  Attorneys' Fees ....................................................... 21

         2.  The Parties Have No Other Agreements Aside
             from Opt-Outs............................................................ 22

     F.  The *Prudential* Factors Support Approval....................................... 22

G.    The Court Should Approve the Plan of Allocation ............................ 24

H.    Final Certification of the Settlement Class ....................................... 25

IV.    CONCLUSION ...................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alves v. Main*,
    2012 WL 6043272 (D.N.J. Dec. 4, 2012) ........................................................8, 14

*Beltran v. SOS Ltd*,
    2023 WL 319895 (D.N.J. an. 3, 2023) .................................................................8

*Boyd v. Coventry Health Care Inc.*,
    299 F.R.D. 451 (D. Md. 2014) ...........................................................................24

*Christine Asia Co. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .....................................................22

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ..................................................................................9

*Du on behalf of Enteromedics, Inc. v. Blackford*,
    2018 WL 4691046 (D. Del. Sept. 28, 2018) .........................................................6

*F.C.V., Inc. v. Sterling Nat'l Bank*,
    2006 WL 1319822 (D.N.J. May 12, 2006) .........................................................16

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) .................................................................................5

*Gordon v. Vanda Pharms. Inc.*,
    2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022)....................................................10

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).....................................................8, 14

*In re AT&T Corp. Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006).............................................................................5, 17

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ................................................................ 18, 21, 24

*In re China Med. Corp. Sec.Litig.*,
No. 8:11-1061 JLS (ANX), 2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) .........10

*In re China Sunergy Sec. Litig.*,
2011 WL 1899715 (S.D.N.Y. May 13, 2011)....................................................18

*In re CIGNA Corp.*,
2007 WL 2071898 (E.D. Pa. July 13, 2007) .........................................................9

*In re Datatec Systems, Inc. Sec. Litig.*,
2007 WL 4225828 (D.N.J. Nov. 28, 2007)................................................. 15, 24

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) .................................................................................14

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004).................................................................. 16, 25

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014).....................................................15

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) .........................................................................24

*In re Indep. Energy Holdings PLC Sec. Litig.*,
2003 WL 22244676 (S.D.N.Y. Sep. 29, 2003) ..................................................15

*In re Ins. Brokerage Antitrust Litig.*,
282 F.R.D. 92 (D.N.J. 2012) ..............................................................................17

*In re Johnson & Johnson Derivative Litig.*,
900 F. Supp. 2d 467 (D.N.J. 2012).....................................................................17

*In re Lucent Techs., Inc., Sec. Litig.*,
307 F. Supp. 2d 633 (D.N.J. 2004).....................................................................14

*In re Marsh & McLennan Cos., Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009).....................................................15

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
2010 WL 547613 (D.N.J. Feb. 9, 2010)..............................................................24

- iv -

*In re Nat'l Football League Players Concussion Injury Litig.*,
821 F. 3d 410 (3d Cir. 2016) .............................................................................3, 11

*In re Ocean Power Techs., Inc.*,
2016 WL 6778218 (D.N.J. Nov. 15, 2016) ............................................. 9, 15, 25

*In re Par Pharm. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013) ...........................................................12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019)..............................................................................5

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ..................................................................... 11, 22, 23

*In re Schering-Plough/Merck Merger Litig.*,
2010 WL 1257722 (D.N.J. Mar. 26, 2010) ...........................................................8

*In re Vicuron Pharms., Inc. Sec. Litig.*,
233 F.R.D. 421 (E.D. Pa. 2006) .............................................................................6

*Lazy Oil Co. v. Wotco Corp.*,
95 F. Supp. 2d 290 (W.D. Pa. 1997) ....................................................................18

*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y. 2012) ..................................................................19

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
2017 WL 2734714 (D.N.J. June 26, 2017) ...........................................................12

*Schuler v. Meds. Co.*
2016 WL 3457218 (D.N.J. June 24, 2016) ...........................................................19

*Shapiro v. JPMorgan Chase & Co.*,
2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)......................................................12

*Singleton v. First Student Mgmt. LLC*,
2014 WL 3865853 (D.N.J. Aug. 6, 2014)........................................................5, 11

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003) ..................................................................13

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ...............................................................................8, 24

*Swinton v. SquareTrade, Inc.*,
  2019 WL 617791 (S.D. Iowa Feb. 14, 2019) ........................................................4

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
  2017 WL 4167440 (E.D. Pa. Sept. 20, 2017) ......................................................12

## Statutes

15 U.S.C. § 78u-4(a)(4) .......................................................................................22

## Rules

Fed. R. Civ. P. 23 ..................................................................................... *passim*

## Other Authorities

4 Newberg on Class Actions § 13.50.......................................................................8

Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904) ...................4, 5

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Keyla D. Bell ("Lead Plaintiff"),[1] on behalf of herself and the Settlement Class, respectfully submits this memorandum of law in support of her motion for final approval of the proposed Settlement resolving all claims asserted in the Action, approval of the proposed Plan of Allocation of Settlement proceeds, and certification of the Settlement Class for settlement purposes.

## I.     INTRODUCTION[2]

Subject to this Court's approval, Lead Plaintiff and Defendant Kanzhun Limited ("Kanzhun") - with the assistance of Jed Melnick of JAMS as mediator - have agreed to settle all claims in this Action against Kanzhun and the Released Parties in exchange for a cash payment of $2.25 million. This is a favorable result for the Settlement Class in this complex litigation against China-based Defendants with no meaningful assets in the U.S. and no applicable insurance coverage to fund a settlement or satisfy a judgment. If approved, this Settlement will dispose of this Action.

---

[1] Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Stipulation of Settlement dated November 4, 2022 (the "Stipulation") (ECF No. 36).

[2] The Declaration of Laurence Rosen ("Rosen Declaration" or "Rosen Decl."), filed herewith, is an integral part of this submission. For the sake of brevity, the Court is respectfully referred to it for a detailed description of this Action. All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and exhibits to, the Rosen Declaration.

This Settlement is fair, adequate, and reasonable under the governing standards in this Circuit. The $2.25 million Settlement recovers approximately 4.6% of the $48.7 million in *maximum* damages *potentially* available in this case and falls well within the range of settlements in comparable securities fraud cases, eliminating the significant risk of losing on a motion to dismiss and the costs and risks of litigating class certification, summary judgment, trial, and the inevitable appeals. At the time the Settlement was reached, Lead Plaintiff had ample knowledge of the strengths and weaknesses of her claims, and was cognizant of Kanzhun's lack of applicable insurance coverage, as well as the reality that the Defendants are located in a jurisdiction that typically does not recognize U.S. judgments. In light of these risks and realities, the $2.25 million Settlement – which provides a meaningful, immediate, and guaranteed recovery for the Settlement Class – is a favorable outcome and in the best interest of the Settlement Class. The reaction of the Settlement Class has been overwhelmingly positive. To date, no objections have been received to any aspect of the Settlement and there have been no requests for exclusion.

Additionally, the Court must also determine if Lead Plaintiff has adequately established a formula to distribute the Settlement. Here, the proposed Plan of Allocation was formulated by an expert, comports with applicable legal principles,

2

and in no way favors Lead Plaintiff over other members of the Settlement Class. Accordingly, the Plan of Allocation is fair and reasonable.

The methods that Lead Plaintiff used to communicate notice—the Notice of Pendency and Proposed Settlement of Class Action ("Long Notice"), the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice"), and the Postcard Notice (collectively, "Notice")—each closely followed what is routinely used to communicate notice in securities class actions. Thus, the Notice also satisfied the requirements of Rule 23, due process, and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

For these reasons, and those set forth below, Lead Plaintiff respectfully submits that the Settlement and Plan of Allocation are in the best interests of the Settlement Class and merit final approval.

## II.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

Rule 23(e) requires court approval for any settlement of class action claims, and such approval should be granted "only after a hearing and only on finding that [a proposed settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F. 3d 410, 436 (3d Cir. 2016) ("*NFL Players*").[3] Rule 23(e)(2) instructs that the Court should

---

[3] Unless otherwise noted, internal citations and quotations are omitted.

3

determine whether the Settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members"). Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919).

These factors are not, however, exclusive. The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* at 918; *see also Swinton v. SquareTrade, Inc.*, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019) ("The specific considerations in Rule 23(e)(2)(A)–(D) were part of the 2018 Amendments. However, they were not intended to displace the various factors

4

that courts have developed in assessing the fairness of a settlement."). For this reason, the traditional factors that are utilized by courts in the Third Circuit—known as the "*Girsh* factors"—to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Singleton v. First Student Mgmt. LLC*, 2014 WL 3865853, at *5-6 (D.N.J. Aug. 6, 2014) (*citing Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164-65 (3d Cir. 2006) (same).

In sum, although the specific factors by which a settlement is evaluated may have changed in some respects, what has not changed is that "[t]he central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate." Advisory Committee Notes to 2018 Amendments (324 F.R.D. at 918).

## III.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.   The Court Should Grant Final Approval of the Settlement

Rule 23(e)(2)(A), requiring adequate representation, and Rule 23(e)(2)(B), requiring arm's-length negotiations, "constitute the procedural analysis" of the

fairness inquiry. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Each aspect of procedural fairness is satisfied.

**1. Lead Plaintiff and Lead Counsel Adequately Represented the Class**

Representative plaintiffs provide adequate representation of a class where the "named plaintiffs' interests are sufficiently aligned with" absent class members. *In re Vicuron Pharms., Inc. Sec. Litig.*, 233 F.R.D. 421, 426 (E.D. Pa. 2006). Here, Lead Plaintiff's claims are typical of, and coextensive with, the Settlement Class's claims, and she has no antagonistic interests. Lead Plaintiff's interest in obtaining the largest possible recovery in this Action is aligned with the Settlement Class's interests. *Du on behalf of Enteromedics, Inc. v. Blackford*, 2018 WL 4691046, at *5 (D. Del. Sept. 28, 2018) (finding adequacy where "[p]laintiff's interests are coextensive with, and not antagonistic to, the interests of the class since they all raise the same claims and seek the same relief"). Indeed, Lead Plaintiff here adequately represented the Settlement Class by vigorously pursuing her shared claims by, among other things, selecting experienced counsel, overseeing the litigation, communicating regularly with Lead Counsel, participating in settlement discussions with Lead Counsel, and evaluating and approving the Settlement. Rosen Decl., ¶53.

Lead Counsel also adequately represented the Settlement Class throughout the litigation. Lead Counsel is highly qualified and experienced in securities litigation, as set forth in its firm resume. *See* Ex. 3, Rosen Law Firm Resume. Here, Lead

Counsel zealously prosecuted the Action against skilled opposing counsel, achieving a favorable settlement for the Settlement Class.

Indeed, the Settlement was achieved only after Lead Counsel, among other things: (a) investigated, research and filed the initial complaint; (b) moved for and secured Ms. Bell's appointment as Lead Plaintiff; (c) conducted a thorough investigation, including: analyzing SEC filings, press releases, analyst reports, and other publicly-available records concerning Kanzhun; retaining and overseeing a private investigator in China to locate and interview former Kanzhun employees and potentially relevant third parties; researching and analyzing sources in the Chinese media and Chinese regulatory filings; and sending a Freedom of Information Act request to the SEC; (d) drafted the operative Complaint in light of additional evidence discovered from the aforementioned investigation; (e) researched arguments and counter-arguments concerning Kanzhun's motion to dismiss and opposed the motion to dismiss; (f) researched and drafted a motion to strike certain exhibits from Kanzhun's motion to dismiss and a reply in further support of the motion to strike; (g) retained and consulted with an economic expert concerning damages; and (h) participated in a mediation with Mr. Melnick, which included the preparation and exchanging of mediation statements and acceptance of a mediator's proposal. Rosen Decl. ¶50. Accordingly, this factor supports final approval of the Settlement.

### 2.    The Settlement was the Result of Arm's-Length Negotiations Between Experienced Counsel

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's-length." This "procedural" fairness determination also encompasses the third *Girsh* factor, which assesses the "degree of case development that Class Counsel [have] accomplished prior to Settlement" to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating" the settlement. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 321 (3d Cir. 2011); *see also In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *10 (D.N.J. Mar. 26, 2010). Approval of a settlement is warranted "[w]here a court can conclude that the parties had sufficient information to make an informed decision about settlement[.]" 4 Newberg on Class Actions § 13.50. The relevant inquiry is "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *Beltran v. SOS Ltd.*, No. CV 21-7454 (RBK/EAP), 2023 WL 319895, at *4 (D.N.J. Jan. 3, 2023), *report and recommendation adopted,* No. CV 21-7454 (RBK/EAP), 2023 WL 316294 (D.N.J. Jan. 19, 2023) (citing *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006).

There is a presumption of fairness when a settlement is reached with the assistance of a mediator. *Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd,* 559 F. App'x 151 (3d Cir. 2014) ("The participation of an independent

mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's-length and without collusion between the parties."); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] ... mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *11 (D.N.J. Nov. 15, 2016) (using an independent mediator for settlement discussions "virtually insures… that the negotiations were conducted at arm's length and without collusion between the parties.").

Here, the Settlement was the result of hard-fought negotiations between experienced counsel overseen by Mr. Melnick. Mr. Melnick observed that "negotiations between counsel for the parties were conducted at arm's length and were not collusive." Ex. 5, Declaration of Jed Melnick ("Melnick Decl.") ¶12. As discussed above, Lead Counsel has extensive experience litigating securities class actions. Additionally, Kanzhun was represented by highly-skilled and experienced counsel from Skadden, Arps, Slate, Meagher & Flom LLP, who zealously represented their client. At the time the Settlement was reached, Lead Plaintiff had a thorough understanding of the strengths and weaknesses of the case. *See* Rosen Decl. ¶¶14, 50 (detailing the investigation performed by Lead Counsel); *Id.* ¶¶25-29 (explaining the risks of continued litigation). Given Lead Counsel's extensive experience and Kanzhun's representation by knowledgeable counsel, the Settling

9

Parties were able to engage in meaningful negotiations to achieve the Settlement. This was supported by Mr. Melnick who further noted that each side was "well-prepared and fully capable of proceeding to a judicial resolution if a settlement could not be achieved." Melnick Decl. ¶12

Further, as the Settling Parties did not resolve the Action at the mediation, to promote resolution Mr. Melnick issued a mediator's proposal for the Settling Parties to ponder. Melnick Decl. ¶11. Only then did the Settling Parties arrive at the Settlement. Rosen Decl. ¶¶19, 38. Courts find that settlements reached with Mr. Melnick's assistance weights in favor of approval. *See e.g., Gordon v. Vanda Pharms. Inc.*, 2022 WL 4296092, at *4 (E.D.N.Y. Sept. 15, 2022) (E.D.N.Y. Sept. 15, 2022 ("The participation of [Jed D. Melnick, a] highly qualified mediator strongly supports a finding that negotiations were conducted at arm's length and without collusion."); *In re China Med. Corp. Sec. Litig.*, No. 8:11-1061 JLS (ANX), 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (Mr. Melnick's involvement as mediator supported final approval of settlement.).

Accordingly, given the Settling Parties' extensive negotiations led by a respected mediator and experienced counsel, this factor supports final approval of the Settlement.

**B.** **The Settlement is Substantively Fair: The Relief Provided for the Settlement Class is Adequate in Light of the Risks, Costs, and Delay of Continued Litigation**

Rule 23(e)(2)(C) instructs the Court to consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Girsh* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial (sixth factor); and the range of reasonableness of the Settlement Fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors). *See Singleton*, 2014 WL 3865853, at *5. As discussed below, each of these factors supports approval of the Settlement.

**1. The Complexity, Expense, and Likely Duration of the Litigation**

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court must also "'survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement.'" *NFL Players*, 821 F.3d at 439 (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998)).

11

Courts routinely recognize that "[s]ecurities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013).[4] Additionally, were the litigation to continue, a potential recovery—if any—"would occur years from now, substantially delaying payment . . . to the Settlement Class." *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *8 (S.D.N.Y. Mar. 24, 2014). In contrast, the Settlement provides an immediate, substantial, and certain recompense to the Settlement Class without exposing the Settlement Class to the risk, expense, and delay of continued litigation. *See Par Pharm.*, 2013 WL 3930091, at *4 ("Given the procedural and substantive complexities inherent in securities fraud class actions, and the time and expense necessarily involved in fully adjudicating this matter, the Court finds that this factor weighs decidedly in favor of approving the Settlement.").

Indeed, securities class actions are inherently complex and expensive to litigate. This case, which involves China-based defendants with no applicable insurance coverage, would have been even more complex were litigation to continue. Rosen Decl. ¶¶30-34 (detailing the complexity, expense, and duration of continued

---

[4] *See also W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2017 WL 4167440, at *4 (E.D. Pa. Sept. 20, 2017) (commenting that "[s]ecurities litigation is notoriously complicated and it is certainly not conducted on the cheap"); *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, 2017 WL 2734714, at *7 (D.N.J. June 26, 2017) (observing that "[f]ederal securities class actions by definition involve complicated issues of fact and law.") (quotation omitted).

litigation). That Defendants and most, if not all witnesses, are in China adds another layer of complexity. Marshalling and obtaining evidence from China is challenging, as the Chinese government has imposed stringent restrictions against the production of evidence and testimony to parties abroad. *Id.* ¶¶26, 31. There is thus no guarantee that Lead Plaintiff would have been able to obtain the necessary evidence to prove her case through summary judgement and trial; and even if she could do so, it would be costly, take years, and delay any potential recovery to Settlement Class Members. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation [.]. . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"). Moreover, any documents produced will likely be in Chinese, requiring translation or the retention of bilingual attorneys to facilitate document review. Additionally, depositions of China-based Defendants and witnesses would need to take place in Hong Kong, as the Chinese government does not allow depositions to take place on the Mainland. Rosen Decl. ¶31. Thus, the complexity, expense, and likely duration of these proceedings favor approval of the Settlement.

### 2. Risks to Proving Liability and Damages

When deciding whether to approve a proposed class action settlement, the fourth and fifth *Girsh* factors—the risks of establishing liability and damages—are

13

"commonly analyzed together" and "survey the possible risks of litigation by balancing the likelihood of success . . . against the immediate benefits offered by settlement." *Alves*, 2012 WL 6043272, at \*19; *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 814 (3d Cir. 1995) (noting the "potential rewards (or downside)" of continued litigation).

While Lead Plaintiff believes that her claims have merit, she also recognizes that she faces substantial obstacles to proving liability and damages. When compared to the certainty of the benefit conferred by the Settlement, these risks militate against further litigation, and support a determination that the Settlement is fair, reasonable and adequate.

**Liability**: Lead Plaintiff faces considerable hurdles to establishing liability. Indeed, "[t]he difficulty of establishing liability is a common risk of securities litigation." *AOL Time Warner,* 2006 WL 903236, at \*11.

Here, there is no guarantee that this Action would survive Kanzhun's pending motion to dismiss. As shown in its motion to dismiss briefing, Kanzhun had strong arguments against several elements of Lead Plaintiff's claims. Lead Plaintiff might not be able to defeat Defendants' motion to dismiss, let alone prevail at summary judgment and trial. *See In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 645 (D.N.J. 2004) (proving liability, particularly scienter, "would have been very difficult" and based on risks and contingencies, settlement is reasonable in light of

14

risks involved in establishing liability); *Ocean Power*, 2016 WL 6778218, at \*19-20 (recognizing the difficulty of establishing liability in securities class action and the added risk of establishing damages); *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at \*8 (S.D.N.Y. Dec. 19, 2014) ("Securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet.").

**Damages**: Proving damages in securities fraud trials "is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury." *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at \*3 (S.D.N.Y. Sep. 29, 2003); *see also In re Datatec Systems, Inc. Sec. Litig.*, 2007 WL 4225828, at \*4 (D.N.J. Nov. 28, 2007) ("[T]here would likely be a battle of experts at trial and there would be no guarantee whom the jury would believe.").

While Lead Plaintiff would retain an expert to opine on the maximum damages suffered by the putative class, Kanzhun would surely proffer an equally well-credentialed expert to express a contrasting view, one that could greatly reduce or even eliminate damages. *In re Marsh & McLennan Cos., Sec. Litig.*, 2009 WL 5178546, at \*6 (S.D.N.Y. Dec. 23, 2009) ("If there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages.").  As a result, "the risks faced by the securities plaintiffs in establishing damages are substantial, and this factor favors

15

approving the settlement." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

### 3. Risks of Class Certification

The sixth *Girsh* factor "evaluates the risks of maintaining the class throughout the trial." *F.C.V., Inc. v. Sterling Nat'l Bank*, 2006 WL 1319822, at *6 (D.N.J. May 12, 2006). Kanzhun would undoubtedly vigorously challenge class certification, and such disputes could very well delve into another "battle of the experts." Lead Plaintiff would need to retain an economics expert to opine that Kanzhun's American Depositary Shares ("ADSs") traded on an efficient market, and that there was a common methodology to calculate class-wide damages. Kanzhun would most certainly engage an expert to contest Lead Plaintiff's expert, arguing, for example, that the market for Kanzhun's ADSs was not efficient, or that the alleged fraud did not impact the price of Kanzhun's ADSs. Even if a class were to be certified, Kanzhun could move to decertify the class at any time. *See* Fed. R. Civ. P. 23(c)(2); *Global Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."). The Settlement avoids the risk and expense of briefing class certification.

### C. The Settlement Amount is Within the Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation

"The final two factors set forth in *Girsh* are typically considered in tandem, and ask whether the settlement is reasonable in light of the best possible recovery

16

and the risks the parties would face if the case went to trial." *Par Pharm.*, 2013 WL 3930091, at \*7.  In conducting this evaluation, the Court should keep in mind "that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and [courts should] guard against demanding to[o] large a settlement based on the court's view of the merits of the litigation." *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 484-85 (D.N.J. 2012).  "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 105 (D.N.J. 2012). "Rather, the percentage recovery must represent a material percentage recovery to [the] plaintiff in light of all the risks considered under *Girsh*." *In re AT & T Corp.*, 455 F.3d at 170.

Considering the substantial risks that Lead Plaintiff faces if litigation were to continue, this Settlement—which provides a certain and immediate recovery of $2.25 million for the benefit of the Settlement Class—is a favorable result. Lead Plaintiff's damages expert estimates that if Lead Plaintiff had fully prevailed on the motion to dismiss, class certification, summary judgment, and after a jury trial, and if the Court and jury accepted Lead Plaintiff's damages theory, including proof of loss causation—*i.e.*, Lead Plaintiff's *best-case scenario*—the total *maximum*

damages would be approximately $48.7 million, under which scenario the Settlement represents a recovery of 4.6%.

Here, Lead Plaintiff must grapple with several unique realities that militate against continued litigation. First, an insurer typically funds most, if not all, of securities class action settlements. Here, however, Kanzhun does not have applicable insurance coverage. Thus, any recovery would be coming from out-of-pocket from Kanzhun itself. Second, Defendants are in China and it is believed that most, if not all, of Kanzhun's assets are in China. China does not typically recognize U.S. judgments. To the best of Lead Plaintiff's knowledge, China has never recognized a U.S. securities class action judgment. Thus, even if Lead Plaintiff were to win at trial and obtain a judgment, it is uncertain whether she could collect it. Rosen Decl. ¶26.

Even in light of those constraints, the Settlement's recovery of approximately 4.6% of maximum damages compares favorably to settlements in similar cases. *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997), *aff'd sub nom. Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999) (approving settlement for 5.35% of estimated damages, overruling objections, and collecting cases approving "class settlements involving far smaller percentage recoveries"); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *15 (S.D.N.Y. May 13, 2011)

(noting that the average settlement in securities class actions ranges from 3% to 7% of total estimated losses); *Schuler v. Meds. Co.*, 2016 WL 3457218, at \*8 (D.N.J. June 24, 2016) (a 4% recovery fell "squarely within the range of previous settlement approvals"); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."). Indeed, the Settlement exceeds the 1.8% median settlement value in for all securities class actions from 2020 to 2022. Ex. 6, NERA Economic Consulting, Recent Trends in Securities Class Action Litigation: 2022 Full Year Review. Thus, this Settlement, recovering approximately 4.6% of what Lead Plaintiff calculates to be maximum damages of $48.7 million against Chinese Defendants with no applicable insurance coverage, compares favorably to settlements in similar securities class actions.

Taking into account the real possibility that Lead Plaintiff might recover nothing (*e.g.* if Lead Plaintiff cannot defeat Kanzhun's motion to dismiss, if Kanzhun chooses to disengage from this litigation because of lack of funds, or if Lead Plaintiff cannot enforce a judgment in China), this Settlement Amount is within the range of reasonableness, weighing in favor of final approval.

### D. The Settlement Class's Reaction to the Settlement Supports Final Approval

The second *Girsh* factor – the reaction of the Settlement Class – overlaps with Rule 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the opportunity to

object. As required by Rule 23(e)(4) & (5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement. *See* Ex. 1, Declaration of Margery Craig Concerning: (A) CAFA Notice; (B) Mailing of the Postcard Notice; (C) Publication of the Summary Notice; and (D) Report on Requests for Exclusions and Objections ("Craig Decl.") at ¶¶ 14-15.

Here, in accordance with the Court's Order Granting Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order", ECF No. 38), 5,797 potential Settlement Class Members were notified about the Settlement. Ex. 1, Craig Decl. at ¶9. This is comprised of the Claims Administrator, Strategic Claims Service ("SCS") causing 4,450 Postcard Notices to be mailed to potential Settlement Class Members. Craig Decl. at ¶7. Additionally, SCS received one email address and immediately emailed the link to the Long Notice and Claim Form. *Id.* at ¶8. SCS was then notified by one of the nominees that it emailed 1,346 of its customers the link to the Long Notice and Claim Form on the settlement webpage. *Id.* SCS also caused the Summary Notice to be published electrically on *Globe Newswire* and in print in the *Investor's Business Daily*. *Id.* at ¶11. In addition, SCS established a dedicated website where potential Settlement Class Members can go to access information about the Settlement, view case documents, and file their claims electronically. *Id.* at ¶13.

20

The Settlement Class's reaction to date demonstrates strong support for the Settlement. There has not been a single objection to any aspect of the Settlement. *Id.* at ¶15; Rosen Decl., ¶44. *Cendant*, 264 F.3d at 235 ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement[.]"). Furthermore, there have been no opt-outs. Craig Decl. at ¶14; Rosen Decl., ¶45.

As provided in the Preliminary Approval Order, Lead Plaintiff will file reply papers in support of the Settlement on February 22, 2023, after the deadline for requesting exclusions or objecting has passed. Lead Plaintiff's reply will address any objections or requests for exclusions received after the date of this filing.

### E.    The Settlement Satisfies the Remaining Rule 23(e)(2) Factors

#### 1.  Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As discussed in the memorandum of law in support of the motion for an award of attorneys' fees, expenses, and award to Lead Plaintiff, filed concurrently herewith, Lead Counsel seeks an award of attorneys' fees of one-third of the Settlement, payment for litigation expenses, and an award to Lead Plaintiff. These requests, fully disclosed in the Notice, are in line with other settlements approved in the Third Circuit. In addition, Lead Counsel requests that any award of fees and expenses be paid at the time the Court makes its award.

21

As provided in the Notice, Lead Plaintiff also requests $5,000 compensatory award pursuant to 15 U.S.C. § 78u-4(a)(4) in connection with her efforts in stewarding this Action.

### 2. The Parties Have No Other Agreements Aside from Opt-Outs

Pursuant to Rule 23(e)(2)(C)(iv), as disclosed in the Stipulation (¶2.12), the Parties have entered into a standard supplemental agreement which provides that if the number of opt-outs reach a certain confidential threshold, Kanzhun has the option to terminate the Settlement. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation, the terms were confidential to avoid creating incentives for a small group of investors to opt out solely to leverage the threshold to exact an individual settlement. This agreement has no bearing on the Settlement's fairness, and as such, this factor favors final approval. *See Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) (stating that opt-out agreements are "standard in securities class action settlements and ha[ve] no negative impact on the fairness of the Settlement").

### F.    The *Prudential* Factors Support Approval

In addition to the *Girsh* factors, the Third Circuit also advises courts to address the considerations set forth in *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998), where applicable. The *Prudential* factors relevant to this case are whether class members may opt out of the Settlement (they

22

can), and whether the procedure for processing individual claims is fair and reasonable. 148 F.3d at 323–24.[5]

Claim procedures in securities class actions are standardized. As in every case, Settlement Class Members here must fill out a form setting out their mailing address and personal identifying information (either a Social Security Number or Tax Identification Number), and their transactions in the securities at issue (here, Kanzhun ADSs). It is necessary to ask Settlement Class Members to submit claims because there is no central repository of the ultimate beneficial owners of these securities. Only Settlement Class Members know who they are; they must therefore submit claims.

The claims procedures also require Settlement Class Members to submit proof of their transactions in Kanzhun ADSs. In Lead Counsel's experience, fraudulent claims are unfortunately submitted in many settlements. Often these claims, if approved, would have large recognizes losses. Requiring proof of transactions

---

[5] The majority of the *Prudential* factors are irrelevant here (just as they were irrelevant in *Prudential*, 148 F.3d at 323-24). Here, no individual lawsuits were filed. Thus, there has been no experience in adjudicating individual actions, nor will there ever be. Scientific knowledge as understood in *Prudential* is not relevant here. There has been no discovery because of the PSLRA-mandated discovery stay (nevertheless, as discussed above, Lead Plaintiff was armed with information necessary to evaluate the strengths and weaknesses of her case). In this case, approval of the Settlement does not depend on approval of attorneys' fees. If the Court believes attorneys' fees requested are too high, it can just award a smaller amount in attorneys' fees and does not need to deny approval of the Settlement. Whether attorneys' fees are reasonable is therefore irrelevant. *Id.* at 323.

ensures that the Claims Administrator can verify suspicious account statements with the brokerage firms at which the accounts are purportedly held, ensuring that the Settlement does not pay fraudulent claims.

### G.     The Court Should Approve the Plan of Allocation

The Long Notice spells out in detail the Plan of Allocation, explaining how the Settlement proceeds are to be divided among claiming Settlement Class Members. *See* Craig Decl., Exhibit B, at pp. 5-7. The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Merck & Co., Inc. Vytorin Erisa Litig.*, 2010 WL 547613, at *6 (D.N.J. Feb. 9, 2010) (citing *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000)); *see also Cendant*, 264 F.3d at 248. Courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *DB Investments*, 667 F.3d at 328. "In evaluating a plan of allocation, the opinion of qualified counsel is entitled to significant respect. The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014); *see also Datatec Systems*, 2007 WL 4225828, at *5 (approving plan because it was "rational and consistent with Lead Plaintiff's theory of the case").

24

In this case, the Plan of Allocation was formulated by Lead Counsel in consultation with a financial consultant. Rosen Decl. ¶40. The Plan of Allocation comports with applicable legal principles and employs accepted loss causation principles. It fairly and rationally allocates the Settlement proceeds among eligible Settlement Class members. *Ocean Power*, 2016 WL 6778218, at *23 ("pro rata distributions are consistently upheld, and there is no requirement that a plan of allocation differentiat[e] within a class based on the strength or weakness of the theories of recovery"); *Global Crossing*, 225 F.R.D. 462 ("When formulated by competent and experienced class counsel, an allocation plan need have only a reasonable, rational basis."). Accordingly, the Plan of Allocation is fair, reasonable, and adequate, and should be approved.

### H.    Final Certification of the Settlement Class

In its Preliminary Approval Order, the Court found, "preliminarily and for purposes of this Settlement only, that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied." Preliminary Approval Order,  at ¶3 (finding that each of the six factors of Rule 23(a) and (b)(3) had been satisfied). Nothing has changed with respect to these elements since the Court entered the Preliminary Approval Order. Thus, for the reasons stated in Lead Plaintiff's Preliminary Approval Brief (ECF No. 37-1 at 4-11), Lead Plaintiff respectfully requests that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and

(b)(3).

## IV.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court

grant her motion for final approval of the Settlement.

Dated: February 1, 2023                Respectfully submitted,

                                       **THE ROSEN LAW FIRM, P.A.**

                                       */s/ Laurence Rosen*
                                       Laurence Rosen
                                       Jing Chen
                                       One Gateway Center
                                       Suite 2600
                                       Newark, NJ 07102
                                       Tel:  (973) 313-1887
                                       Fax: (973) 833-0399
                                       Email: lrosen@rosenlegal.com
                                               jchen@rosenlegal.com

                                       Erica L. Stone
                                       Phillip Kim (*admitted Pro Hac Vice*)
                                       275 Madison Ave, 40th Floor
                                       New York, NY 10016
                                       Tel: (212) 686-1060
                                       Fax: (212) 202-3827
                                       Email: estone@rosenlegal.com
                                               pkim@rosenlegal.com

                                       *Lead Counsel for Lead Plaintiff*

26

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2023 a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Laurence Rosen
Laurence Rosen