# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEYLA D. BELL, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KANZHUN LIMITED, PENG ZHAO, YU ZHANG, XU CHEN, and TAO ZHANG,<br><br>Defendants. | Case No: 2:21-cv-13543-KM-MAH<br><br>CLASS ACTION<br><br><br>Motion Day: March 1, 2023<br><br><br>Hon. Kevin McNulty |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND <u>AWARD TO LEAD PLAINTIFF</u>

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................1

II.     HISTORY OF THE LITIGATION ........................................................3

III.    THE COURT SHOULD APPROVE THE FEE REQUEST .........................4

        A.      Lead Counsel is Entitled to an Award of Attorneys' Fees From the Common Fund ..................................................................................4

        B.      The Court Should Award Attorneys' Fees Using the Percentage Approach ...........................................................................................6

IV.     APPLICATION OF THE *GUNTER* AND *PRUDENTIAL* FACTORS SUPPORTS LEAD COUNSEL'S REQUEST FOR A ONE-THIRD FEE....7

        A.      The Size of the Fund Created and the Benefit to Class Members Supports the Requested Fee ...............................................................9

        B.      No Settlement Class Members Have Objected to Any Aspect of the Settlement ........................................................................................10

        C.      Lead Counsel's Skill and Efficiency Supports the Request................12

        D.      The Complexity and Duration of the Litigation Support the Request 15

        E.      The Risk of Nonpayment Supports the Requested Fee.......................18

        F.      Lead Counsel Devoted Significant Time to the Case .........................20

        G.      Approval of Similar Awards in Similar Cases Supports the Request.20

        H.      The *Prudential* Factors Favor Approving the Requested Fee ............23

        I.      A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee...................................................................................25

V.      LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ........................................................................................28

VI.    THE COURT SHOULD GRANT THE REQUESTED AWARD TO LEAD PLAINTIFF ................................................................................................30

VII.   CONCLUSION...........................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ................................................................2

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ...........................................................................5

*Andavarapu v. iBio, Inc. et al.*,
14-cv-1434-RGA (D. Del. April 21, 2016) ..........................................32

*Bell Atlantic Corp. v. Bolger*,
2 F.3d 1304 .......................................................................................12

*Beltran v. SOS Limited, et al.*,
Case No. 1:21-cv-07454-RBK-EAP (D.N.J.) ........................................14

*Beltran v. SOS Ltd.*,
2023 WL 319895 (D.N.J. Jan. 3, 2023) ................................... 20, 30, 32

*Blum v. Stenson*,
465 U.S. 886 (1984) ........................................................................6, 24

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ..............................................................................4

*Brown v. Esmor Correctional Servs., Inc.*,
2005 WL 1917869 (D.N.J. Aug. 10, 2005) ..........................................22

*Chemi v. Champion Mortg.*,
2009 WL 1470429 (D.N.J. May 26, 2009) .................................... 28, 29

Christine Asia Co. Ltd. et al. v. Jack Yun Ma, et al.,
1:15-md-02631-CM-SDA (S.D.N.Y.) .................................................14

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000) ............................................... 12, 21

*Elkin v. Walter Investment Management Corp.*,
 2018 WL 8951073 (E.D. Pa. Dec. 18, 2018) .......................................................22

*Fanning v. Acromed Corp.*,
 2000 WL 1622741 (E.D. Pa. Oct. 23, 2000) .......................................................22

*Florin v. Nationsbank of Georgia, N.A.*,
 60 F.3d 1245 (7th Cir. 1995) ...............................................................................2

*Gunter v. Ridgewood Energy Corp.*,
 223 F.3d 190 (3d Cir. 2000) ...................................................................... *passim*

*Hall v. AT & T Mobility LLC*,
 2010 WL 4053547 (D.N.J. Oct. 13, 2010) ................................................... 20, 22

*He v. China Zenix Auto International Limite*d,
 Case No. 2:18-cv-15530-KM-JSA (D.N.J.) ........................................... 14, 20, 32

*Hensley v Eckerhart*,
 461 U.S. 424 (1983) .............................................................................................9

*Hicks v. Stanley*,
 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .....................................................31

*In re Am. Bus. Fin. Servs. Inc. Noteholders Ltigiation*,
 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008).....................................................29

*In re AT & T Corp.*,
 455 F.3d 160 (3d Cir. 2006) ...................................................................... *passim*

*In re BP p.l.c. Sec. Litig.*,
 852 F. Supp. 2d 767 (S.D. Tex. 2012)..................................................................19

*In re Cendant Corp. Litig.*,
 264 F.3d 201 (3d Cir. 2001) .................................................................................9

*In re Cendant Corp. Sec. Litig.*,
 404 F.3d 173 (3d Cir. 2005) ............................................................................4, 7

*In re Cendant Corp., Derivative Action Litig.*,
 232 F. Supp. 2d 327 (D.N.J. 2002)....................................................................28

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011) .......................................................10

*In re Corel Corp. Inc. Sec. Litig.*,
  293 F. Supp. 2d 484 (E.D. Pa. 2003).................................................................21

*In re Datatec Sys., Inc. Sec. Litig.*,
  2007 WL 4225828 (D.N.J. Nov. 28, 2007).........................................................16

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...............27

*In re Gen. Instrument Sec. Litig.*,
  209 F. Supp. 2d 423 (E.D. Pa. 2001).................................................................22

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ........................................................................ 7, 12, 15

*In re GNC S'holder Litigation: All Actions*,
  668 F. Supp. 450 (W.D. Pa. 1987) ....................................................................15

*In re Greenwich Pharm. Sec. Litig.*,
  1995 WL 251293 (E.D. Pa. Apr. 26, 1995).........................................................22

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014).....................................................17

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ................................................................. *passim*

*In re Innocoll Holdings Public Ltd.*,
  Case No. 2:17-cv-00341-GEKP (E.D.P.a. Oct 28, 2022) ..................................32

*In re Interpool, Inc. Sec. Litig.*,
  No. 04-321 (SRC) (D.N.J. Aug. 29,2006).........................................................22

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
  2019 WL 7375288 (D.N.J. Nov. 7, 2019).........................................................21

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*
  No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009).............32

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
  2010 WL 547613 (D.N.J. Feb. 9, 2010)................................................................21

*In re Ocean Powers Techs., Inc.*,
  No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ........................29

*In re Orthopedic Bone Screw Prod. Liab. Litig.*,
  176 F.R.D. 158 (E.D. Pa. 1997) .........................................................................12

*In re Par Pharm. Sec. Litig.*,
  2013 WL 3930091 (D.N.J. July 29, 2013) .................................................. 15, 32

*In re Processed Egg Prod. Antitrust Litig.*,
  2012 WL 5467530 (E.D. Pa. Nov. 9, 2012).......................................................24

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ........................................................... *passim*

*In re Ravisent Techs., Inc. Sec. Litig.*,
  2005 WL 906361 (E.D. Pa. Apr. 18, 2005).................................................. 21, 26

*In re Reliance Sec. Litig.*,
  2002 WL 35645209 (D. Del. Feb. 8, 2002) .......................................................22

*In re Remeron Direct Purchaser Antitrust Litig.*,
  2005 WL 3008808 (D.N.J. Nov. 9, 2005)................................................... 21, 22

*In re Remeron End-Payor Antitrust Litig.*,
  2005 WL 2230314 (D.N.J. Sept. 13, 2005).......................................................29

*In re Rite Aid Corp. Sec. Litig.*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001)................................................................21

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ........................................................... *passim*

*In re RJR Nabisco, Inc. Sec. Litig.*,
  1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) .....................................................23

*In re Safety Components, Inc. Sec. Litig.*,
  166 F. Supp. 2d 72 (D.N.J. 2001)....................................................... 8, 22, 26

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
    2013 WL 5505744 (D.N.J. Oct. 1, 2013) ...................................................... *passim*

*In re Tricor DirectPurchaser Antitrust Litig.*,
    No. 05-340-SLR (D. Del. 2009) ...............................................................22

*In re Tupperware Brands Corp. Sec. Litig.*,
    No. 620CV357ORL31GJK, 2020 WL 3259749 (M.D. Fla. May 27, 2020) .......14

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*,
    724 F. Supp. 160 (S.D.N.Y. 1989) .........................................................26

*In re Unisys Corp. Sec. Litig.*,
    2001 WL 1563721 (E.D. Pa. Dec. 5, 2001) ..............................................22

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
    2020 WL 3166456 (D.N.J. June 15, 2020) ...............................................19

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) .....................................................5, 17

*Institutionalized Juvs. v. Sec'y of Pub. Welfare*,
    758 F.2d 897 (3d Cir. 1985) .................................................................26

*Katz v. China Century Dragon Media, Inc.*,
    2013 WL 11237202 (C.D. Cal. Oct. 10, 2013) ..........................................30

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) ..................................................14

*Lachance v. Harrington*,
    965 F. Supp. 630 (E.D. Pa. 1997) .........................................................28

*Lazy Oil Co. v. Witco Corp.*,
    95 F. Supp. 2d 290 (W.D. Pa. 1997) .......................................................9

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998) .................................................................26

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................7, 28

*McDonough v. Toys R Us, Inc.*,
   80 F. Supp. 3d 626 (E.D. Pa. 2015)........................................................................28

*Meijer, Inc. v. 3M*,
   2006 WL 2382718 (E.D. Pa. Aug. 14, 2006).........................................................27

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ...............................................................................................26

*Murray v. Weinberger*,
   741 F.2d 1423 (D.C. Cir. 1984)..............................................................................26

*Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited Company*,
   2014 WL 12778314 (E.D. Pa. Sept. 15, 2014)........................................................22

*Neuberger v. Shapiro*,
   110 F. Supp. 2d 373 (E.D. Pa. 2000)......................................................................22

*Ortiz v. Canopy Growth Corp., et al.*,
   Case No. 2:19-cv-20543-KM-ESK (Jun. 7, 2022)..................................................32

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
   2017 WL 2734714 (D.N.J. June 26, 2017) ..................................................... *passim*

*Pace v. Quintanilla*,
   No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) .........14

*Richard Rupp and Rodrigo Leal v. Momo, Inc., et al.*,
   Case No. 1:19-cv-04433-GBD (S.D.N.Y.) .............................................................14

*Rite Aid Corp.*,
   362 F. Supp. 2d 587 (E.D. Pa. 2005).......................................................................27

*Rowe v. E.I. DuPont de Nemours & Co.*,
   2011 WL 3837106 (D.N.J. Aug. 26, 2011).................................................. 9, 22, 23

*Schuler v. Meds. Co.*,
   2016 WL 3457218 (D.N.J. June 24, 2016) ..................................................... *passim*

*Smith v. Dominion Bridge Corp.*,
   2007 WL 1101272 (E.D. Pa. April 11, 2007) .........................................................22

*Stoetzner v. U.S. Steel Corp.*,
   897 F.2d 115 (3d Cir. 1990) .................................................................12

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ...................................................................6

*Tellabs, Inc. v. Makor Issues & Rights. Ltd.*,
   127 S. Ct. 2499 (2007)...........................................................................5

*Trief v. Dun & Bradstreet Corp.*,
   840 F. Supp. 277 (S.D.N.Y. 1993) .......................................................18

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002)..............................................................27

*Wallace v. Powell*,
   288 F.R.D. 347 (M.D. Pa. 2012) ..........................................................23

*Yedlowski v. Roka Bioscience, Inc.*,
   No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016)... *passim*

## Statutes

15 U.S.C. §78u-4(a) ...................................................................... 3, 7, 30

## Other Authorities

H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995) ...................................31

Lead Plaintiff Keyla D. Bell ("Lead Plaintiff") respectfully submits this memorandum of law in support of her Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff.[1]

## I.   INTRODUCTION

The proposed $2.25 million all-cash, non-reversionary Settlement is the result of Lead Counsel's vigorous, persistent, and skilled efforts over the course of this complex litigation against China-based Defendants with no applicable insurance coverage and no meaningful assets in the U.S. The Settlement is a favorable result for the Settlement Class, and was achieved in the face of significant litigation risks and hurdles.

Indeed, from the outset of this litigation Lead Counsel faced numerous challenges to obtaining a recovery. This is a highly complex case involving a China-based company, Kanzhun Limited ("Kanzhun"). Additionally, not only are Defendants in China, where U.S. judgment are typically not recognized, Kanzhun does not have applicable insurance coverage that could fund a settlement or judgment. The Settlement significantly mitigates against these risks by providing a certain recovery for Settlement Class Members. Further, the risk of losing was very real, and it was greatly enhanced by the fact that Lead Counsel would be litigating

---

[1] Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Stipulation of Settlement dated November 4, 2022 (the "Stipulation") (ECF No. 36).

against highly skilled defense counsel, under the heightened pleading standard and automatic discovery stay of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The PSLRA—as well as a host of post-PSLRA judicial decisions concerning falsity, scienter, loss causation, and damages—has made it significantly more difficult for investors to bring and successfully conclude securities class actions. *See In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA."); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J., sitting by designation) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."). There was, therefore, a very strong possibility that the case would yield little or no recovery after potentially many years of costly litigation.

Despite these risks, Lead Counsel undertook this litigation on a fully contingent basis with no guarantee of ever being paid. In short, at no point in this litigation were Lead Counsel "assured of a paycheck." *Florin v. Nationsbank of Georgia, N.A.*, 60 F.3d 1245, 1247 (7th Cir. 1995).

For their efforts on behalf of the Settlement Class, Lead Counsel seeks an award of attorneys' fees in the amount of one-third (33⅓%) of the Settlement Amount, or $750,000, plus interest earned at the same rate as the Settlement Fund.

2

Having engaged in over a year-and-a-half of diligent and hard-fought litigation and invested a $417,967.50 worth of professional time to achieve the Settlement, the requested attorneys' fee is reasonable based on an application of the Third Circuit's "*Gunter*" and "*Prudential*" factors for determining appropriate fee awards in common fund cases. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (listing factors) (citing *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998)). In addition, it is well within the range of fees awarded in similar complex, contingency fee cases, and is further supported by a "cross-check" of the requested attorneys' fee against Lead Counsel's lodestar, which results in a multiplier of 1.79.

Lead Counsel also seeks reimbursement of out-of-pocket litigation expenses that they incurred in connection with the prosecution of this Action in the amount of $33,376.08.

Finally, Lead Plaintiff requests a modest award of $5,000 pursuant to 15 U.S.C. §78u-4(a)(4) to compensate her for her time spent leading this Action on behalf of the Settlement Class. This request is reasonable and in line with awards granted in similar cases.

## II.    HISTORY OF THE LITIGATION

The concurrently filed Declaration of Laurence Rosen ("Rosen Declaration" or "Rosen Decl.") is an integral part of this submission. For the sake of brevity, the

Court is respectfully referred to it for a more detailed description of, *inter alia*: the factual and procedural history of the Action; the nature of the claims asserted; the litigation and negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and a description of the services Lead Counsel provided for the benefit of the Settlement Class.

## III.   THE COURT SHOULD APPROVE THE FEE REQUEST

### A.   Lead Counsel is Entitled to an Award of Attorneys' Fees From the Common Fund

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[2] The Third Circuit and courts within this circuit have reached the same conclusion. *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 205 (3d Cir. 2005) ("[W]e agree with the long line of common fund cases that hold that attorneys 'whose efforts create, discover, increase, or preserve a [common] fund' . . . are entitled to compensation."); *Ikon*, 194 F.R.D. at 192 ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members.").

---

[2] Unless otherwise noted, internal citations and quotations are omitted.

4

Common fund fee awards, such as the one-third of the Settlement Amount requested here, encourage and support meritorious class actions and thus promote private enforcement of, and compliance with, the federal securities laws, as well as representation of those seeking redress for damages inflicted on entire classes of persons. *See, e.g.*, *Gunter*, 223 F.3d at 198 (stating that goal of awarding fees from common fund is to "ensur[e] that competent counsel continue to be willing to undertake risky, complex, and novel litigation"); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 750-51 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) ("Fair awards . . . encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance."). Indeed, the Supreme Court has emphasized that private securities cases, such as this Action, are "an indispensable tool with which defrauded investors can recover their losses – a matter crucial to the integrity of domestic capital markets." *Tellabs, Inc. v. Makor Issues & Rights. Ltd.*, 127 S. Ct. 2499, 2508 n.4 (2007); *see also Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013) (recognizing that "Congress, the Executive Branch, and this Court, moreover, have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions").

**B.      The Court Should Award Attorneys' Fees Using the Percentage Approach**

Lead Counsel respectfully submits that the Court should award a fee based on a percentage of the common fund obtained for the Settlement Class, and utilize a lodestar cross-check to confirm that the fee is reasonable. *See In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006). The percentage-of-recovery method is almost universally preferred in common fund cases because it most closely aligns the interests of counsel and the class. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class"); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 330 (3d Cir. 2011) (the percentage of recovery method "is generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure.").[3] The Third Circuit has also "recommended that district courts use the lodestar method to cross-check the reasonableness of a percentage-of-recovery fee award." *In re AT & T Corp.*, 455 F.3d at 164; *Sullivan*, 667 F.3d at 330.  However, "[t]he lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method." *In re AT & T Corp.*, 455 F.3d at 164.

---

[3] *Accord In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005); *Prudential*, 148 F.3d at 333; *see Gunter*, 223 F.3d at 195.

The use of the percentage of recovery method also comports with the language of the PSLRA, which mandates that "[t]otal attorneys' fees and expenses awarded ... not exceed a ***reasonable percentage*** of the amount of any damages and prejudgment interest actually paid to the class … ." 15 U.S.C. §78u-4(a)(6) (emphasis added); *Rite Aid Corp.,* 396 F.3d at 300 ("Consistent with past jurisprudence, the percentage-of-recovery method was incorporated in the Private Securities Litigation Reform Act of 1995."); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (When drafting the PSLRA, Congress "indicated a preference for the use of the percentage method".). Thus, "the PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188, n. 7 (3d Cir. 2005).

For the reasons set forth below, Lead Counsel's requested award of attorneys' fees of one-third of the Settlement Fund is reasonable and should be approved.

## IV.   APPLICATION OF THE *GUNTER* AND *PRUDENTIAL* FACTORS SUPPORTS LEAD COUNSEL'S REQUEST FOR A ONE-THIRD FEE

Under Third Circuit law, district courts have considerable discretion in setting an appropriate percentage-based fee award in traditional common-fund cases. *See, e.g., Gunter*, 223 F.3d at 195 ("We give [a] great deal of deference to a district court's decision to set fees."); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995). In exercising this discretion, the

Third Circuit has instructed district courts to consider, among other things, the

"*Gunter* factors" and the "*Prudential* factors." *In re AT & T Corp.*, 455 F.3d at 165.

The *Gunter* factors include:

> (1) the size of the fund created and the number of persons benefitted;
> (2) the presence or absence of substantial objections by members of the
> class to the settlement terms and/or fees requested by counsel; (3) the
> skill and efficiency of the attorneys involved; (4) the complexity and
> duration of the litigation; (5) the risk of nonpayment; (6) the amount of
> time devoted to the case by Lead Counsel; and (7) the awards in similar
> cases.

*Id.* at 165. The *Prudential* factors include:

> (1) the value of benefits accruing to class members attributable to the
> efforts of class counsel as opposed to the efforts of other groups, such
> as government agencies conducting investigations, (2) the percentage
> fee that would have been negotiated had the case been subject to a
> private contingent fee agreement at the time counsel was retained, and
> (3) any "innovative" terms of settlement.

*Id.* "This list was not intended to be exhaustive. … [and] a district court should

consider… any other factors that are useful and relevant with respect to the particular

facts of the case." *Id*. at 165-66. Moreover, in application, "these factors 'need not

be applied in a formulaic way. Each case is different, and in certain cases, one factor

may outweigh the rest.'" *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d

72, 94 (D.N.J. 2001), quoting *Gunter*, 223 F.3d at 195 n. 1.

As demonstrated below, analysis of the relevant factors supports the requested

award.

8

### A. The Size of the Fund Created and the Benefit to Class Members Supports the Requested Fee

The first *Gunter* factor "consider[s] the fee request in comparison to the size of the fund created and the number of class members to be benefitted." *Rowe v. E.I. DuPont de Nemours & Co.*, 2011 WL 3837106, at *18 (D.N.J. Aug. 26, 2011); *see also Hensley v Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"). Of course, "[a] smaller fund does not necessarily equate to a smaller percentage award." *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, 2017 WL 2734714, at *11 (D.N.J. June 26, 2017). In fact, "because of fixed costs and economies of scale, attorneys' fees and costs do not increase dollar-for-dollar with the size of the case. Thus, it takes a greater percentage of the settlement to support litigation in a smaller case." *Id.*

Here, the $2.25 million settlement is a favorable outcome that will provide Settlement Class Members with an immediate cash recovery, while avoiding the significant risk, delay, expenses, and uncertainty of further litigation. As explained in Lead Plaintiff's Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement (the "Final Approval Brief"), filed concurrently herewith, the Settlement represents a recovery of 4.6% of maximum class-wide damages. This recovery compares favorably to similar settlements in the Third Circuit. *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *Lazy*

9

*Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999) (approving settlement for 5.35% of estimated damages, overruling objections, and collecting cases approving "class settlements involving far smaller percentage recoveries"); *Schuler v. Meds. Co.*, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (finding that a 4% recovery fell "squarely within the range of previous settlement approvals"); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of total estimated losses). Moreover, the Settlement exceeds the 1.8% median settlement value in for all securities class actions from 2020 to 2022. *See* Ex. 6 to Rosen Decl., NERA Economic Consulting, Recent Trends in Securities Class Action Litigation: 2022 Full Year Review.

Accordingly, the Settlement represents a favorable outcome for the Settlement Class, providing an immediate and certain benefit that is in line with typical recoveries in securities class actions despite the many hurdles present in this case.

**B.    No Settlement Class Members Have Objected to Any Aspect of the Settlement**

The reaction of the Settlement Class to the requested fee is also important and, in this regard, courts consider "the presence or absence of substantial objections by members of the class to the settlement and/or fees requested by counsel." *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *9 (D.N.J. July 29, 2013).

To date, 5,797 potential Settlement Class Members have been notified about the Settlement. Ex. 1, Ex. 1 to Rosen Decl., Declaration of Margery Craig Concerning: (A) CAFA Notice; (B) Mailing of the Postcard Notice; (C) Publication of the Summary Notice; and (D) Report on Requests for Exclusions and Objections ("Craig Decl.") at ¶9. Of this, the Claims Administrator caused 4,450 Postcard Notices to be mailed to potential Settlement Class Members and, upon receipt of one email address, immediately emailed the link to the Long Notice and Claim Form. *Id.* at ¶¶7-8. SCS was then notified by one of the nominees that it emailed 1,346 of its customers the link to the Long Notice and Claim Form on the settlement webpage. *Id.* at ¶8. A copy of the Summary Notice was also published electrically on *Globe Newswire* and in print in the *Investor's Business Daily*. *Id.* at ¶11. Each of these notices states that Lead Counsel would request attorneys' fees of up to one-third of the Settlement Amount, reimbursement of expenses of no more than $45,000, and an award to Lead Plaintiff of no more than $5,000.[4]

While the deadline to file objections is not until February 8, 2023, and thus has not yet passed, to date there have been no objections to the fee request (or to any aspect of the Settlement). Craig Decl. at ¶¶14-15; Rosen Decl. ¶¶44-45.[5] "[T]he absence of substantial objections by class members to the fee requests weigh[s] in

---

[4] *See* Craig Decl., Exs. B, D, E.
[5] If any objections are received after the date of this filing, Lead Plaintiff will address them in her reply brief, to be filed on February 22, 2023.

favor of approving the fee request." *Rite Aid Corp*, 396 F.3d at 305; *see also Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (even when 29 members of a 281 person class (*i.e.*, 10% of the class) objected, the response of the class as a whole "strongly favors [the] settlement"); *In re General Motors*, 55 F.3d at 812 (quoting *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1313 n. 15 (3d Cir.1993)) (stating that it is generally assumed that "'silence constitutes tacit consent to the agreement'"); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 176 F.R.D. 158, 185 (E.D. Pa. 1997) (holding that "relatively low objection rate militates strongly in favor of approval of the settlement").

## C. Lead Counsel's Skill and Efficiency Supports the Request

The Third Circuit has explained that the goal of the percentage fee award device is to ensure "that competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Gunter*, 223 F.3d at 198. In this regard, "[t]he single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000). Here, in the face of significant risks and determined opposition, Lead Counsel obtained a favorable result for the Settlement Class, securing a recovery representing 4.6% of maximum damages. This certain recovery is especially favorable because: (1) unlike the vast majority of securities class action settlements, Defendants have no applicable insurance policies to fund a settlement; thus, the Settlement is being

12

funded entirely out-of-pocket by Kanzhun; and (2) the risk of non-collectability against Kanzhun, who is based in China, was extremely high. China does not typically recognize U.S. judgments. Therefore, even if Lead Plaintiff were to obtain a judgment, it is uncertain whether she could collect any of it. Rosen Decl., ¶26.

Against this backdrop, Lead Counsel performed a thorough investigation into the alleged misconduct. Among other things, Lead Counsel reviewed a voluminous number of public documents concerning Kanzhun, including Chinese news articles and regulatory filings. Lead Counsel also retained a private investigator in China to conduct interviews with former Kanzhun employees and speak with potentially knowledgeable third parties. Lead Counsel also consulted with an economics expert concerning damages. Lead Counsel's findings were presented to Kanzhun and Jed Melnick of JAMS during the mediation process, and were instrumental in obtaining this $2.25 million settlement. Rosen Decl., ¶50.

Lead Counsel's experience and track record are described in it firm resume. *See* Ex. 3 to Rosen Decl. As its firm resume shows, Lead Counsel is highly experienced in the complex field of securities fraud class action litigation and has obtained numerous recoveries on behalf of investors. Courts throughout the country, including in this district, have acknowledged Lead Counsel's experience and ability. *See e.g., Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[The Rosen Law Firm] is highly

13

experienced in the complex field of securities fraud class action litigation"); *In re Tupperware Brands Corp. Sec. Litig.*, No. 620CV357ORL31GJK, 2020 WL 3259749, at *2-3 (M.D. Fla. May 27, 2020), *report and recommendation adopted*, 2020 WL 3259086 (M.D. Fla. June 16, 2020) (recognizing that The Rosen Law Firm is "well-credentialed" with "significant securities litigation experience"); *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action."); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is "highly qualified [and] experienced" in securities class actions."). Additionally, Rosen Law has vast experience litigating against Chinese issuers and securing recoveries on behalf of investors. For example, Lead Counsel achieved a $250 million settlement against the China-based Alibaba, which remains the largest securities class action settlement against a Chinese company (*Christine Asia Co. Ltd. et al. v. Jack Yun Ma*, et al., 1:15-md-02631-CM-SDA (S.D.N.Y.)); *see also He v. China Zenix Auto International Limited,* Case No. 2:18-cv-15530-KM-JSA (D.N.J.) (McNulty, J.); *Beltran v. SOS Limited, et al*., Case No. 1:21-cv-07454-RBK-EAP (D.N.J.); *Richard Rupp and Rodrigo Leal v. Momo, Inc., et al.,* Case No. 1:19-cv-04433-GBD

14

(S.D.N.Y.) Lead Counsel applied the same skill and determination to litigating this Action.

"The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by Lead Counsel." *Yedlowski*, 2016 WL 6661336, at *21; *see also Universal Travel*, 2017 WL 2734714, at *11 (same). Here, Kanzhun was zealously represented by highly-skilled and experienced counsel from Skadden, Arps, Slate, Meagher & Flom LLP, a prominent law firm with ample resources and expertise. Rosen Decl., ¶36. The ability of Lead Counsel to obtain a favorable outcome for the Settlement Class in the face of formidable legal opposition further confirms the quality of Lead Counsel's representation. Thus, this factor weighs in favor of the requested fee.

### D. The Complexity and Duration of the Litigation Support the Request

"The fourth factor captures 'the probable costs, in both time and money of continued litigation.'" *Universal Travel,* 2017 WL 2734714, at *12 (quoting *In re Gen. Motors*, 55 F.3d at 812). As an initial matter, courts have repeatedly acknowledged that "securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *Par Pharm.*, 2013 WL 3930091, at *4; *see also In re GNC S'holder Litigation: All Actions*, 668 F. Supp. 450, 451 (W.D. Pa. 1987) ("The complexity and concomitant expense of the instant litigation is beyond peradventure."); *Yedlowski*, 2016 WL 6661336, at *21 ("securities class actions are

15

by nature particularly expensive to prosecute, usually requiring expert testimony on, at least questions of damages and loss causation."). This case was no exception.

As elaborated in the Rosen Declaration and in Lead Plaintiff's Final Approval Brief, Lead Plaintiff faced a number of hurdles in establishing liability and damages, the resolution of any in Kanzhun's favor could have resulted in no recovery for the Settlement Class. *See In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *4 (D.N.J. Nov. 28, 2007) (commenting on the risk in proving scienter, loss causation, and damages). To avoid this fate, Lead Counsel performed a thorough cross-border investigation of the claims in this Action, consulted with experts, attended mediation led by Mr. Melnick, and engaged in hard-fought negotiations with Kanzhun to achieve this Settlement. Ex. 5 to Rosen Decl., Declaration of Jed Melnick at ¶12.

However, had this litigation continued, Lead Plaintiff would have faced substantial hurdles and risk. When this Action was settled, the Settling Parties had fully briefed Kanzhun's motion to dismiss, pending the Court's decision. Even if Lead Plaintiff were to prevail over the motion to dismiss, Lead Plaintiff would have to engage in uncertain cross-border discovery in China, hire additional experts, and move to certify the class, which Kanzhun would have vigorously opposed. Kanzhun would then have moved for summary judgment, which would have to be briefed and argued, a pre-trial order would have to be prepared, proposed jury instructions would have to be submitted, and motions *in limine* would have to be filed and argued.

16

Substantial time and expense would need to be expended in preparing the case for trial, and the trial itself would be expensive and uncertain.

Moreover, even if the jury returned a favorable verdict after trial, it is likely that any verdict would be the subject of numerous post-trial motions and a complex multi-year appellate process. *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *16 (S.D.N.Y. Dec. 19, 2014) ("Over the last five years, nearly 48% of all securities class actions have been dismissed on motions prior to trial, while plaintiffs who succeeded at trial have found their judgments overturned on post-trial motions or appeal."). Indeed, in complex securities cases, even a victory at the trial stage does not guarantee a successful outcome. *See Warner Commc'ns*, 618 F. Supp. at 747-48 ("Even a victory at trial is not a guarantee of ultimate success. If [Lead Plaintiff] were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, [Defendants] would appeal such judgment. An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself."); *Yedlowski*, 2016 WL 6661336, at *21 ("If the jury found in Plaintiffs' favor, they would still face Defendants' post-trial motions and likely appeal. Collecting a judgment requires crossing every one of these hurdles, but each of these steps involves significant risks."). Further, as discussed in Lead Plaintiff's Final Approval Brief, Kanzhun had no applicable insurance to pay any judgment in this case and there remained the high probability of being unable to enforce a

17

judgment in China. Lead Counsel's efforts to secure the Settlement mitigates against such risk by guaranteeing certain recovery for Settlement Class Members.

Considering the riskiness, expense, length, and complexity of this putative securities class action—especially when compared against the significant and certain $2.25 million recovery achieved by the Settlement—Lead Counsel's fee request is reasonable. Accordingly, this factor weighs in favor of the requested fee. *See Universal Travel*, 2017 WL 2734714, at *12 (awarding one-third fee and noting that "due to the complexity and nature of securities litigation, any further litigation would likely be time consuming as well as expensive due to the need for experts.").

### E. The Risk of Nonpayment Supports the Requested Fee

Lead Counsel undertook this action on an entirely contingent fee basis, taking the risk that the litigation would yield no or very little recovery and leave them uncompensated for their time, as well as for their out-of-pocket expenses. This was not a desirable Action as no other investors sought to be lead plaintiff. Rosen Decl., ¶13. Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *E.g., In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *28 (D.N.J. Oct. 1, 2013).

The risk of non-payment is especially high in securities class actions, as they are "notably difficult and notoriously uncertain." *Trief v. Dun & Bradstreet Corp.*,

840 F. Supp. 277, 281 (S.D.N.Y. 1993); *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2020 WL 3166456, at *13 (D.N.J. June 15, 2020) (finding that the risk of non-payment supported fee request and that "recovery was uncertain due to the difficulty of prevailing in securities cases generally."). Legal precedents are continually making it more difficult to plead securities class actions. *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading.").

Here, Lead Counsel undertook this litigation on a contingency basis, with no guarantee that their time would ever be compensated or expenses reimbursed. This is a heavy responsibility with substantial risk. Here, this risk was heightened given that Defendants have no applicable insurance, no meaningful assets in the U.S. and are all based in China, where American judgments are typically not recognized. In assuming this heavy responsibility, Lead Counsel had to ensure that sufficient resources were dedicated to the prosecution of the Action. With an average lag time of several years for cases of this type to conclude, the financial burden on contingent-fee counsel is far greater than on firms that are paid on an ongoing basis, like most defense counsel in these cases. In light of the difficulty and risk of undertaking such a lawsuit, Lead Counsel should be reimbursed for its time and expenses.

### F.    Lead Counsel Devoted Significant Time to the Case

The sixth *Gunter* factor looks at counsel's time devoted to the litigation. *Gunter*, 223 F.3d at 199. This factor is usually considered with the lodestar cross-check to look at reasonableness of counsel's requested fee. Accordingly, this factor is addressed in connection with the lodestar cross-check, *infra* Section IV. I.

### G.    Approval of Similar Awards in Similar Cases Supports the Request

With respect to the final *Gunter* factor, "the court must (1) compare the award requested with other awards in comparable settlements; and (2) ensure that the award is consistent with what the attorney would have received had the fee been negotiated on the open market." *Hall v. AT & T Mobility LLC*, 2010 WL 4053547, at *21 (D.N.J. Oct. 13, 2010).[6] As to the first prong of the inquiry, numerous courts within the Third Circuit, including the District of New Jersey, have awarded fees of one-third (*i.e.* 33⅓%) of the recovery, even in cases involving much larger settlement funds than the instant case. *See Beltran v. SOS Ltd.*, 2023 WL 319895, at *8 (D.N.J. Jan. 3, 2023), *report and recommendation adopted*, 2023 WL 316294 (D.N.J. Jan. 19, 2023) (awarding one-third of $5 million settlement fund, finding it "is well within the typical range and is reasonable."); *He v. China Zenix Auto International*

---

[6] The second prong of this *Gunter* factor is substantially similar to the second *Prudential* factor. *See AT&T Corp.*, 455 F.3d at 165 (listing factors).

*Limited,* Case No. 2:18-cv-15530-KM-JSA (D.N.J.) (Dkt. No. 61 at ¶1) (awarding one-third of $1.8 million settlement fund); *In re Merck & Co., Inc. Vytorin Erisa Litig.*, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) (awarding one-third of $41.5 million settlement fund and noting that "awards in similar common fund cases appear analogous" and award was "consistent with other similar cases"); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (awarding one-third of $7.3 million and stating that "the award of one-third of the fund for attorneys' fees is consistent with fee awards in a number of recent decisions within this district"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (review of 289 settlements demonstrates "average attorney's fee percentage [of] 31.71%" with a median value that "turns out to be one-third".); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *12 (D.N.J. Nov. 9, 2005) (one-third of $75 million); *In re Liquid Aluminum Sulfate Antitrust Litig.*, 2019 WL 7375288, at *4 (D.N.J. Nov. 7, 2019) (approving attorneys' fees of one-third, or $11,018,884.36); *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 495-98 (E.D. Pa. 2003) (awarding one-third of $7 million settlement fund); *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 WL 906361, at *10 (E.D. Pa. April 18, 2005) (finding award of one-third of $7 million reasonable after cross-checking percentage of recovery to lodestar); *Ortiz v. Canopy Growth Corp., et al.*, Case No. 2:19-cv-20543-KM-ESK

21

(D.N.J. June 7, 2022) (Dkt. No. 100 at ¶18) (approving one-third of $13,000,000 settlement amount as attorneys' fee award).[7]

"The requested fee of 33⅓% is also consistent with a privately negotiated contingent fee in the marketplace." *Hall*, 2010 WL 4053547, at *21. "Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation." *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005); *see also Fanning v. Acromed Corp.*, 2000 WL 1622741, at *7 (E.D. Pa. Oct. 23, 2000) (noting that "[Lead

---

[7] *See also In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340-SLR, Dkt. No. 543 (D. Del. 2009) (awarding one-third fee from $250 million settlement fund); *Rowe*, 2011 WL 3837106, at *18 (awarding one-third of $8.3 million settlement); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423 (E.D. Pa. 2001) (one-third of $48 million); *Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited Company*, 2014 WL 12778314, at *7 (E.D. Pa. Sept. 15, 2014) (one-third of $15 million settlement); *In re Reliance Sec. Litig.*, 2002 WL 35645209, at *18 (D. Del. Feb. 8, 2002), opinion corrected, 2002 WL 35645207 (D. Del. Mar. 20, 2002) (awarding one-third of $7.485 million); *In re Unisys Corp. Sec. Litig.*, 2001 WL 1563721 (E.D. Pa. Dec. 5, 2001) (awarding one third of $5.75 million settlement fund); *In re Safety Components, Inc., Sec. Litig.*, 166 F.Supp.2d 72, 93-4 (D.N.J. 2001) (awarding one-third of $4.5 million settlement); *In re Greenwich Pharm. Sec. Litig.*, 1995 WL 251293 (E.D. Pa. Apr. 26, 1995) (one-third of $4.375 million); *Universal Travel*, 2017 WL 2734714, at *12 (awarding fees of one-third of $4.075 million settlement fund); *Elkin v. Walter Investment Management Corp.*, 2018 WL 8951073, at *1-2 (E.D. Pa. Dec. 18, 2018) (33⅓% of $2.95 million settlement fund); *Brown v. Esmor Correctional Servs., Inc.*, 2005 WL 1917869, at *14 (D.N.J. Aug. 10, 2005) (one-third of $2.5 million); *Neuberger v. Shapiro*, 110 F. Supp. 2d 373 (E.D. Pa. 2000) (33⅓% of $1.5 million); *In re Interpool, Inc. Sec. Litig.*, No. 04-321 (SRC), slip op. at 2 (D.N.J. Aug. 29, 2006) (awarding 33-1/3% of $1 million fund); *Smith v. Dominion Bridge Corp.*, 2007 WL 1101272, at *10 (E.D. Pa. April 11, 2007) (granting fee of "33.33%" of $750,000).

Counsel] in private contingency fee cases regularly negotiate agreements providing for thirty to forty percent of any recovery."); *Rowe*, 2011 WL 3837106, at \*22 (awarding one-third as "consistent with a privately negotiated contingent fee in the marketplace"). Thus, the requested fee award is strongly supported by both subparts of this final *Gunter* factor.

### H.    The *Prudential* Factors Favor Approving the Requested Fee

The applicable *Prudential* Factors also weigh in favor of approving the requested fee. First, the Third Circuit has advised district courts to examine whether class counsel benefited from a governmental investigation or enforcement action concerning the alleged wrongdoing. *See Prudential*, 148 F.3d at 338. Here, Lead Counsel performed their own independent investigation without the assistance of any governmental investigation and developed their own theories to ultimately obtain the Settlement. *Wallace v. Powell*, 288 F.R.D. 347, 375 (M.D. Pa. 2012) (the settlement in question could not be attributed to work done by other groups such as the government). Accordingly, this Settlement is solely attributable to the efforts of Lead Counsel.

Second, the requested fee of one-third of the common fund is also consistent with typical fee awards in non-class cases. *See In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138, at \*7 (S.D.N.Y. Aug. 24, 1992) ("What should govern [contingent fee] awards is not the essentially whimsical view of a judge, or even a

23

panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases."). If this were an individual action, the customary contingent fee would likely range between 30% and 40% of the recovery. *See, e.g.*, *Ikon*, 194 F.R.D. at 194; *Blum*, 465 U.S. at 903 n. *19 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."). Lead Counsel's fee request of one-third of the Settlement Fund comports with these private standards. *Schuler*, 2016 WL 3457218, at *10. Thus, this factor supports Lead Counsel's fee request.

Another factor the Third Circuit asks district courts to consider is whether the settlement contains "any innovative terms." *Prudential*, 148 F.3d at 340. This Settlement does not have any particularly innovative terms because, as Lead Counsel believes, an all-cash recovery is the best remedy for the injury suffered by the investors in the Settlement Class, and is the standard recovery in securities class actions. In such circumstances, the lack of innovative terms "neither weighs in favor nor detracts from a decision to award attorneys' fees." *In re Processed Egg Prod. Antitrust Litig.*, 2012 WL 5467530, at *6 (E.D. Pa. Nov. 9, 2012).

Accordingly, the *Gunter* and *Prudential* factors strongly favor approving the fee request.

24

## I.    A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

While not required, a court may "cross-check the percentage award at which [it] arrive[s] against the 'lodestar' award method[.]" *Gunter*, 223 F.3d at 195 n.1; *see also Prudential*, 148 F.3d at 333. "The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method." *Rite Aid Corp.*, 396 F.3d at 306. "Conversely, where the ratio of the [percentage-of-recovery] to the lodestar is relatively low, the cross-check can confirm the reasonableness of the potential award under the [percentage] method." *In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *33 (D.N.J. Oct. 1, 2013).

In "cross-checking" the percentage of recovery award against the lodestar, the Third Circuit has emphasized that the calculation is "not a full-blown lodestar inquiry" and need not entail "mathematical precision" or "bean-counting." *In re AT & T Corp.*, 455 F.3d at 169 (*quoting Rite Aid Corp.*, 396 F.3d at 306); *AT & T Corp.*, 455 F.3d at 164 ("The lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method."). Accordingly, "the district court may rely on summaries submitted by [counsel] and need not review actual billing records." *Rite Aid Corp.*, 396 F.3d at 306-07.

Here, application of a lodestar cross-check confirms that the requested one-third fee is fair and reasonable. Lead Counsel devoted an aggregate total of 520.65

25

hours to the prosecution and resolution of this Action. Ex. 2 to Rosen Decl. Lead

Counsel's total lodestar—which is derived by multiplying their hours spent on the

litigation by their current hourly rates for attorneys—is \$417,967.50.[8] *Id.* Thus, the

requested one-third fee, which equates to \$750,000 (plus interest on that amount at

the same rate as earned by the Settlement Fund), represents a multiplier of 1.79 on

Lead Counsel's lodestar.[9]

The multiplier here supports the fairness of the requested fee because it

demonstrates that counsel is requesting a fee within the range normally granted by

courts. *See In re Raviscent Techs. Inc. Sec. Litig.,* 2005 WL 906361 (E.D. Pa. Apr.

18, 2005) ("Lodestar multiples of less than four are well within the range awarded

---

[8] Courts have approved the use of current rates in the lodestar calculation to "compensate for the delay in receiving compensation, inflationary losses, and the loss of interest." *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *see also Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *In re Safety Components, Inc. Sec. Litig.*, 166 F.Supp.2d 72, 103, n. 11 (D.N.J. 2001) ("calculating the lodestar of Plaintiffs' Counsel using current hourly rates is appropriate."); *Institutionalized Juvs. v. Sec'y of Pub. Welfare*, 758 F.2d 897, 923 (3d Cir. 1985) & n. 41 (3d Cir. 1985) ("using current market rates to calculate the lodestar figure may counterbalance the delay in payment as well as simplify the task of the district court" (quoting *Murray v. Weinberger*, 741 F.2d 1423, 1433 (D.C. Cir. 1984))); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("current rates, rather than historical rates, should be applied in order to compensate for the delay in payment").

Additionally, Lead Counsel submit that Lead Counsel's rates are less than, or comparable to, those used by peer plaintiff and defense-side law firms litigating matters of similar magnitude. *See* Ex. 4 to Rosen Decl. (Peer Firm Billing Rates).

[9] \$750,000/\$417,967.50 = 1.79.

by courts in this Circuit."); *Schuler*, 2016 WL 3457218, at *9-10 (awarding one-third of settlement fund, resulting in 3.57 multiplier in case that settled before decision on motion to dismiss); *Meijer, Inc. v. 3M*, 2f006 WL 2382718, at *24 (E.D. Pa. Aug. 14, 2006) (approving a percentage fee award that translated to a 4.77 multiplier in case that settled after one year); *Yedlowski*, 2016 WL 6661336, at *18 (awarding a 3.4 multiplier); *Rite Aid Corp.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (approving percentage fee award that equated to a 6.96 multiplier); *In re AT & T Corp.*, 455 F.3d at 173 ("[W]e approved of a lodestar multiplier of 2.99 in *Cendant PRIDES*, in a case we stated 'was neither legally nor factually complex'" and that settled in 4 months); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *17 (S.D.N.Y. July 27, 2007) ("[l]odestar multipliers of nearly 5 have been deemed 'common' by courts[.]"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming 3.65 multiplier and explaining that in contingency fee cases, courts "routinely enhanced the lodestar to reflect the risk of non-payment" and that this "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases."). *A fortiori*, the lodestar cross-check confirms the reasonableness of the requested attorneys' fees.

27

Moreover, counsel should not be penalized for their efficiency and ability to resolve an action without protracted litigation and delay. *See Maley*, 186 F. Supp. 2d at 363–64, 373 (awarding 33.3% of $11.5 million settlement, reflecting a multiplier of 4.65, in a case that settled after one year, noting that "in the context of a complex class action, early settlement has far reaching benefits in the judicial system").

## V. LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

"In the Third Circuit, it is standard practice to reimburse litigation expenses in addition to granting fee awards." *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 658 (E.D. Pa. 2015). Indeed, "'[c]ounsel in common fund cases [are] entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case.'" *Universal Travel*, 2017 WL 2734714, at *13 (*quoting In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 343 (D.N.J. 2002)); *see also In re Ikon*, 194 F.R.D. at 192 ("'There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of ... reasonable litigation expenses from that fund.'" (quoting *Lachance v. Harrington*, 965 F. Supp. 630, 651 (E.D. Pa. 1997)).

Here, Lead Counsel expended $33,376.08 in out-of-pocket costs, which are divided into categories in the Rosen Fee Declaration. *See* Ex. 2 to Rosen Decl.; *see also Chemi v. Champion Mortg.*, 2009 WL 1470429, at *13 (D.N.J. May 26, 2009)

28

(finding summary of expenses sufficient for determination that expenses requested were reasonable). These litigation expenses are well-documented, based on the books and records maintained by Lead Counsel, and reflect the costs of prosecuting this action. *Id.* The majority of expenses were for private investigators, experts, and Mr. Melnick's mediation services. Other necessary expenses incurred include fees for notices and press releases to potential class members, online legal research costs, court and filing fees, translation fees, and travel expenses. These litigation expenses were necessary for the prosecution of this Action. Reimbursement of similar expenses is routinely permitted. *In re Ocean Power Techs., Inc.,* No. 3:14-CV-3799, 2016 WL 6778218, at *29 (D.N.J. Nov. 15, 2016) (approving reimbursement of expenses including "costs of Plaintiff's private investigator, photocopying, postage, messengers, filing fees, travel, long distance telephone, telecopier, mediation fees, and the fees and expenses of Plaintiff's damages expert."); *In re Remeron End-Payor Antitrust Litig.,* 2005 WL 2230314, at *32 (D.N.J. Sept. 13, 2005) (approving reimbursement of "costs expended for purposes of prosecuting this litigation, including substantial fees for experts [and] copying costs"); *In re Am. Bus. Fin. Servs. Inc. Noteholders Ltigiation*, 2008 WL 4974782, at *18 (E.D. Pa. Nov. 21, 2008) (approving reimbursement of expenses for "duplication costs, online legal research, travel, meals, experts, telephone, fax services, transcripts, postage, messenger, mediator, filing and court fees, service fees, [and] transportation" based

29

on declarations of counsel); *Beltran*, 2023 WL 319895, at *8 (approving reimbursement of expenses including notice to class members and press releases); *Katz v. China Century Dragon Media, Inc.*, 2013 WL 11237202, at *8 (C.D. Cal. Oct. 10, 2013) (same).

The Notice informed Settlement Class Members that Lead Counsel would seek reimbursement of litigation expenses up to $45,000 — higher than the expense reimbursement sought here — and to date, there have been no objections. Rosen. Decl. ¶44; Craig Decl., ¶15. The requested litigation expenses should, therefore, be awarded.

## VI.    THE COURT SHOULD GRANT THE REQUESTED AWARD TO LEAD PLAINTIFF

Pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), Lead Plaintiff seeks an award of $5,000 for her time and effort spent overseeing this action.

While the PSLRA does not explicitly provide for incentive awards for a lead or named plaintiff to compensate them for their service, it does acknowledge that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). "The Conference Committee recognizes that lead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the courts discretion to award fees

30

accordingly." H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995). "[T]he Third Circuit favors encouraging representative plaintiffs, by appropriate means, to create common funds and to enforce laws—even approving incentive awards to class representatives." *Schering-Plough*, 2013 WL 5505744, at \*37; *see also. Hicks v. Stanley*, 2005 WL 2757792, at \*10 (S.D.N.Y. Oct. 24, 2005) (Courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place.").

The Notice informed Settlement Class Members that Lead Counsel would seek an award for Lead Plaintiff not to exceed $5,000.[10] No objections have been received in response to these requests. Rosen Decl. ¶44; Craig Decl., ¶15. Accordingly, the Court should award the requested amount. Throughout this litigation, Lead Plaintiff was available to Lead Counsel as needed and performed her duties with attentiveness and diligence. Lead Plaintiff communicated with Lead Counsel regarding the posture and progress of the case, as well as litigation strategy, the settlement terms, and contributed to the successful resolution of this action. Rosen Decl., ¶52. "These are precisely the types of activities that support awarding

---

[10] *See* Craig Decl., Exs. B, D, E.

31

reimbursement of expenses to class representatives." *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009); *Schuler*, 2016 WL 3457218, at *11 (approving awards to plaintiffs who reviewed filings, conferred with lead counsel, remained apprised about the case and the company).

Here, the award to Lead Plaintiff amounts to a small percentage (*i.e.* 0.2%) of the Settlement Fund, and as such, is reasonable and should be approved. Courts in this District regularly make similar or more generous awards to lead plaintiffs. *He v. China Zenix Auto International Limited,* Case No. 2:18-cv-15530-KM-JSA (D.N.J.) (Dkt. No. 61 at ¶3) (awarding $5,000 each to two plaintiffs); *Beltran*, 2023 WL 319895, at *8 (same); *Canopy Growth*, Case No. 2:19-cv-20543-KM-ESK (D.N.J. June 7, 2022) (Dkt. No. 100 at ¶19) (awarding $5,000 to each lead plaintiff totaling $30,000); *Par Pharma.*, 2013 WL 3930091, at *11 (awarding $18,000 to lead plaintiff); *In re Innocoll Holdings Public Ltd., Co. Sec. Litig.,* Case No. 2:17-cv-00341-GEKP (E.D.P.a. Oct. 28, 2022) (Dkt. No 139 at 12) (awarding $10,000 to two lead plaintiffs); *Andavarapu v. iBio, Inc. et al.*, 14-cv-1434-RGA (D. Del. April 21, 2016) (Dkt. No. 69) (awarding $10,000 to lead plaintiff in case that settled before discovery).

32

## VII.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court:

(a) award Lead Counsel reasonable attorneys' fees in the total amount of one-third

of the Settlement Amount (*i.e.* $750,000); (b) reimburse Lead Counsel for litigation

expenses in the amount of $33,376.08; and (c) grant an award to Lead Plaintiff of

$5,000.

Dated: February 1, 2023                    Respectfully submitted,

                                           **THE ROSEN LAW FIRM, P.A.**

                                           */s/ Laurence Rosen*
                                           Laurence Rosen
                                           Jing Chen
                                           One Gateway Center
                                           Suite 2600
                                           Newark, NJ 07102
                                           Tel:  (973) 313-1887
                                           Fax: (973) 833-0399
                                           Email: lrosen@rosenlegal.com
                                                   jchen@rosenlegal.com

                                           Erica L. Stone
                                           Phillip Kim (*admitted Pro Hac Vice*)
                                           275 Madison Ave, 40th Floor
                                           New York, NY 10016
                                           Tel: (212) 686-1060
                                           Fax: (212) 202-3827
                                           Email: estone@rosenlegal.com
                                           Email: pkim@rosenlegal.com

                                           *Lead Counsel for Lead Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Laurence Rosen
Laurence Rosen