## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEYLA D. BELL, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KANZHUN LIMITED, PENG ZHAO, YU ZHANG, XU CHEN, and TAO ZHANG,<br><br><br>Defendants. | Case No: 2:21-cv-13543-KM-MAH<br><br>CLASS ACTION<br><br>Motion Day: March 1, 2023<br><br>Hon. Kevin McNulty |

## DECLARATION OF LAURENCE ROSEN IN SUPPORT OF MOTIONS FOR: (I) FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND (II) AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

I, Laurence Rosen, declare under penalty of perjury that the following is true and correct to the best of my knowledge.[1]

1.     I am an attorney duly licensed to practice law in New Jersey and before this Court. I am the Managing Partner at The Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Lead Counsel for Lead Plaintiff Keyla D. Bell ("Lead Plaintiff" or "Bell") and the Settlement Class in the Action. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2.     I submit this Declaration in support of Plaintiff's Motions, filed concurrently herewith, for: (1) Final Approval of Class Action Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff. The purpose of this Declaration is to set forth the nature of the litigation and negotiations that led to the Settlement with Kanzhun Limited ("Kanzhun" and with Lead Plaintiff, the "Settling Parties"). This Declaration attempts to demonstrate why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Lead Counsel's requests for attorneys' fees and expenses and award to Lead Plaintiff are reasonable and should be approved by the Court.

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement dated November 4, 2022 (the "Stipulation") (ECF No. 36).

1

3.    The Settlement provides for a cash payment by Kanzhun in the amount of $2.25 million in exchange for full releases of Lead Plaintiff's claims, and completely resolves the Action.

4.    After Lead Plaintiff moved for preliminary approval of the Settlement on November 7, 2022, the Court entered an order preliminarily approving the Settlement, preliminarily certifying the Settlement Class for settlement purposes, and approving the form and manner of providing notice to potential Settlement Class Members (the "Preliminary Approval Order"). ECF No. 38.

5.    Lead Plaintiff now seeks final approval of the Settlement, as well as an award of attorneys' fees to Lead Counsel of one-third of the Settlement Amount (or $750,000, plus interest earned at the same rate as the Settlement Fund), and reimbursement of counsel's out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $33,376.08 and a $5,000 compensatory award to Lead Plaintiff.

6.    Attached hereto as Exhibit 1 is a true and correct copy of the Declaration of Margery Craig Concerning: (A) CAFA Notice; (B) Mailing of the Postcard Notice; (C) Publication of the Summary Notice; and (D) Report on Requests for Exclusions and Objections ("Craig Decl.").

7. Attached hereto as Exhibit 2 is a true and correct copy of the Declaration of Laurence Rosen on behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Rosen Fee Decl.").

8. Attached hereto as Exhibit 3 is a true and correct copy of The Rosen Law Firm, P.A.'s firm resume ("Rosen Law Firm Resume").

9. Attached as Exhibit 4 is a true and correct copy of peer firm billing rates ("Peer Firms Billing Rates").

10. Attached as Exhibit 5 is a true and correct copy of the Declaration of Jed Melnick ("Melnick Declaration" or "Melnick Decl.").

11. Attached as Exhibit 6 is a true and correct copy of excerpts from a report by NERA Economic Consulting, titled *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, published on January 24, 2023.

**Procedural and Settlement Negotiation History**

12. This Action began on July 12, 2021, when Ms. Bell filed a putative securities fraud class action complaint in this Court against Defendants alleging claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). ECF No. 1.

13. On January 4, 2022, after filing the only motion seeking to be appointed lead plaintiff and approve selection of counsel, Judge Kevin McNulty appointed Ms. Bell as Lead Plaintiff and Rosen Law as Lead Counsel. ECF No. 10.

14.    Upon her appointment as Lead Plaintiff, Ms. Bell, through Lead Counsel, further investigated the claims in this Action by, among other things: reviewing Kanzhun's public filings, announcements, press releases, and earnings call transcripts; retaining and overseeing a private investigator in China to locate and interview former Kanzhun employees and relevant third-party witnesses; and consulting with an economics expert to analyze the range of provable damages.

15.    On March 4, 2022, Lead Plaintiff filed the operative Amended Class Action Complaint For Violations of the Federal Securities Laws ("Complaint"). ECF No. 15.

16.    On May 3, 2022, Kanzhun filed a motion to dismiss the Complaint. ECF No. 18. On June 20, 2022, Lead Plaintiff filed her opposition to the motion to dismiss. ECF No. 26. That same day, Lead Plaintiff also filed a motion to strike certain exhibits from Kanzhun's motion to dismiss. ECF No. 27. On July 5, 2022, Kanzhun filed an opposition to Lead Plaintiff's motion to strike. ECF No 28.  On July 11, 2022, Lead Plaintiff's motion to strike was fully briefed with the filing of a reply. ECF No. 29. Also on July 11, 2022, Kanzhun's motion to dismiss was fully briefed with the filing of a reply. ECF No. 30.

17.    In mid-2022, after the Settling Parties had fully briefed Kanzhun's motion to dismiss, the Settling Parties began to discuss a potential resolution of the Action and engaged Jed Melnick of JAMS in August 2022 to serve as mediator.

18.    On September 1, 2022, Lead Plaintiff filed a letter, with Kanzhun's permission, notifying the Court that they would be participating in a mediation on September 14, 2022 and would provide the Court with a status report on or before September 21, 2022. ECF No. 31.

19.    A full-day mediation was held on September 14, 2022. Before the mediation session, the Settling Parties exchanged mediation statements, explaining their positions and providing factual evidence on, among other things, liability, and damages. The mediation concluded without an agreement, however, Mr. Melnick offered a mediator's proposal after the session. Ex. 5, Melnick Decl., at ¶11. On September 15, 2022, the Settling Parties accepted Mr. Melnick's mediator's proposal to settle the action for $2.25 million. *Id*. After several drafts, on September 20, 2022, the Settling Parties executed a binding term sheet.

20.    On September 21, 2022, Lead Plaintiff, with Kanzhun's permission, notified the Court that they had reached an agreement in principle to resolve the Action. ECF No. 32.

21.    The Settling Parties worked diligently to formalize the Settlement, culminating in a comprehensive Stipulation. ECF No. 36.

22.    On November 7, 2022, Lead Plaintiff filed her unopposed motion for preliminary approval of the Settlement (ECF No. 37), which the Court granted on November 10, 2022 (Preliminary Approval Order, ECF No. 38).

5

**<u>Nature of the Allegations in the Complaint</u>**

23.     The Complaint alleges that, during the Class Period, Defendants made materially false and misleading statements regarding the regulatory proceeding and associated risks that Kanzhun was facing at the time of the initial public offering ("IPO"). Specifically, the Complaint alleges that the Registration Statement failed to inform investors that immediately before Kanzhun's IPO, the Cyberspace Administration of China (the "CAC"), a very powerful regulatory agency in China, found that Dianzhang, one of the two apps that Kanzhun operated, committed violations concerning cybersecurity and personal privacy, including its illegal collecting of personal information without consents from users. The Complaint alleges that Defendants failed to disclose that the CAC demanded Kanzhun to immediately correct its violations and at the time of the IPO, was still reviewing Kanzhun's rectification report.  The Complaint alleges that, as a result, at the time of the IPO, Kanzhun's business was faced with a present, serious and imminent risk of being shut down or suspended subject to cybersecurity review if its rectification could not satisfy the CAC.

24.     The Complaint alleges that investors suffered losses when the price of Kanzhun's American Depositary Shares ("ADSs") fell $5.79 per ADS, or 15%, to close at $30.52 per ADS on July 6, 2021, when the CAC announced a cybersecurity

review of Kanzhun's business and suspension of new user registrations on Kanzhun's main app.

**Risks of Continued Litigation**

25.     There were a number of unique aspects to this case that strongly weigh in favor of this resolution. Indeed, as explained below, there was a significant risk that if litigation were to continue, Lead Plaintiff and the Settlement Class would end up with no recovery.

26.     First, Kanzhun is a China-based company and substantially all of its assets are in China. Both of the Individual Defendants are Chinese nationals residing in China. Chinese courts typically do not enforce U.S. judgments. Thus, even if Lead Plaintiff were to litigate this case to a successful verdict and obtain a judgment, there is substantial risk that Lead Plaintiff might collect nothing. Second, Kanzhun does not have an applicable insurance policy to fund a settlement. In the vast majority of securities class actions, settlements are funded by insurance policies. Here, because there is no applicable insurance policy to fund a settlement, any recovery must be self-funded by Kanzhun – who is located in China and practically immune to U.S. judgments.

27.     Moreover, in light of the Private Securities Litigation Reform Act of 1995 ("PSLRA")'s heightened pleading standards, there is no guarantee that this Action would survive Kanzhun's motion to dismiss. Kanzhun had strong arguments

against several elements of Lead Plaintiff's claims that the Court may find persuasive. Even if Lead Plaintiff were to defeat the motion to dismiss, Lead Plaintiff would also have to overcome Kanzhun's inevitable motion for summary judgment and then win at trial. Each of these steps are fraught with risks and uncertainties.

28.    Further, proving damages in a securities case is always difficult and invariably requires intricate expert testimony. Kanzhun would oppose any expert Lead Plaintiff retained with an equally well-credentialed expert expressing the opposite view. It is impossible to predict how a jury would react to this battle of experts.

29.    Had the Settling Parties continued to litigate this Action, in addition to engaging in discovery, Lead Plaintiff would have had to move for class certification. This motion would be expensive and time-consuming, requiring Lead Plaintiff to produce documents, sit for a deposition, and engage an expert to demonstrate that Kanzhun ADSs traded in an efficient market and that there was a common methodology to calculate damages for the Settlement Class. Class certification is typically vigorously opposed by defendants in securities class actions.

**<u>Complexity, Expense and Likely Duration of the Litigation</u>**

30.    Without a Settlement, Lead Plaintiff faces protracted and expensive litigation—with unique discovery challenges posed by China-based Defendants and witnesses—that could drag the Action on for years.

8

31.    Even if Lead Plaintiff overcomes Kanzhun's motion to dismiss (which, as discussed above, is by no means guaranteed), discovery would be highly complicated and impose substantial costs. Here, as Kanzhun is a China-based company its officers and executives are all believed to reside in China. As such, most – if not all – of the evidence is in China. Lead Plaintiff would need to overcome Kanzhun's inevitable arguments that certain documents are not available for production due to China's stringent "State Secrecy" and data privacy laws. Even if Lead Plaintiff managed to obtain documents, the vast majority of them are likely to be in Chinese, which would require Lead Plaintiff to translate them as well as hire bilingual staff attorneys to review them. Additionally, depositions of Chinese nationals would be difficult, as Lead Plaintiff would need to travel to Hong Kong to take depositions (China does not allow depositions on the Mainland), or seek the Chinese government's permission to conduct video depositions of Chinese nationals in China. The Chinese government is unlikely to grant such a request. Third, parties with relevant knowledge and/or documents are also likely to be located in China, and Lead Plaintiff would need letters rogatory to obtain evidence from relevant third parties. All this makes discovery especially protracted, expensive, and complicated.

32.    Following discovery, Kanzhun would likely file a motion for summary judgment. If Lead Plaintiff managed to defeat summary judgment, trial would be

9

next, and whoever loses at trial would almost certainly appeal. This process could take years to play out.

33. Moreover, experts would be needed to opine on, at minimum, market efficiency, price impact, loss causation, and damages, adding substantially to Lead Plaintiff's litigation costs.

34. Indeed, securities class actions are inherently complex and expensive to litigate, and this one is even more so because of the unique challenges presented by China-based Defendants without applicable insurance coverage. Thus, the Settlement, which confers an immediate and guaranteed recovery and avoids the considerable risks and expenses of continued litigation, is in the best interest of the Settlement Class.

**The Settlement Resulted From Arm's-Length Negotiations Between Experienced Counsel**

35. Lead Counsel has extensive experience and a long track record of success representing investors in securities class actions in courts throughout the country, including in the District of New Jersey. *See* Ex. 3, Lead Counsel's Firm Resume.

36. Defendants were represented by highly-skilled and experienced counsel from Skadden, Arps, Slate, Meagher & Flom LLP, a prominent law firm with ample resources and expertise defending securities class actions.

10

37.     The Settling Parties engaged Mr. Melnick as mediator. Mr. Melnick has been a full-time mediator for more than fifteen years and has extensive experience assisting the settlement of many different types of complex class actions, including such matters as bankruptcy and securities claims, often involving numerous parties and multiple, related lawsuits. *See* Ex. 5, Melnick Decl. at ¶¶4-5.

38.     The Settlement was the result of Mr. Melnick's mediator's proposal. At all times the settlement negotiations were arm's-length and hard fought. According to Mr. Melnick, "the parties carried out extensive, detailed, and hard-fought discussions regarding the strengths and weaknesses of the case" and "negotiations between counsel for the parties were conducted at arm's length and were not collusive." *Id*., at ¶12. Mr. Melnick further observed, that "all sides litigated the action in a vigorous, professional, and thorough manner. It was also clear to me that both sides were well-prepared and fully capable of proceeding to a judicial resolution if a settlement could not be achieved." *Id*.

39.     In the opinion of the team of lawyers at my firm who worked on this case, the Settlement is a fair, reasonable, and adequate result for the Settlement Class. The Settlement confers a benefit on the Settlement Class, eliminating the risk of continued litigation under circumstances where a more favorable outcome is less likely.

**The Plan of Allocation**

40.    The Notice of Pendency and Proposed Settlement of Class Action ("Long Notice") describes the Plan of Allocation. Ex. 1, Craig Decl. at Ex. B (Long Notice) at pp. 5-7. Lead Counsel formulated the Plan of Allocation with the help of a financial consultant to distribute the Settlement Fund fairly and reasonably to Settlement Class Members consistent with the federal securities laws and the principles of loss causation.

41.    Under the Plan of Allocation, a "Recognized Loss" amount will be calculated for all relevant transactions of Kanzhun ADSs during the Settlement Class Period. In general, the Recognized Loss will be the difference between the estimated artificial inflation on the purchase date and the estimated artificial inflation on the sale date, or the difference between the actual price and the sales price, whichever is less. Accordingly, any Kanzhun ADSs purchased during the Settlement Class Period that were not held over a corrective disclosure date will have no Recognized Loss because the level of alleged artificial inflation is the same on the date of purchase and on the date of sale. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their total Recognized Loss.

42.    In sum, the Plan of Allocation was designed to allocate the proceeds of the Net Settlement Fund fairly and rationally among Settlement Class Members

based on the losses they suffered on transactions in Kanzhun ADSs that were attributable to the conduct alleged in the Complaint. No Settlement Class Member receives preferential treatment; the formula for calculating Recognized Loss in the Plan of Allocation is the same for all Settlement Class Members.

**The Reaction of the Settlement Class**

43.     To date, 5,797 potential Settlement Class Members have been notified about the Settlement. Ex. 1, Craig Decl. at ¶9. This includes 4,450 Postcard Notices mailed by the Claims Administrator and third-party nominees such as brokerage firms and banks, 1,346 potential Settlement Class Members who received a direct link to the Long Notice from their nominees, and 1 potential Settlement Class Member who received an email containing a link to the Notice and Claim from the Claims Administrator.  *Id.* at ¶¶7-8.

44.     The deadline to object to, or request exclusion from, the Settlement is February 8, 2022. To date, neither the Claims Administrator nor Lead Counsel has received any objections to any aspect of the Settlement, the Plan of Allocation, Lead Counsel's request for fees and reimbursement of expenses, or the requested award to Plaintiff. *Id.* at ¶15.

45.     To date, neither the Claims Administrator nor Lead Counsel has received any requests for exclusion. *Id.* at ¶14.

46.     Should any objections or requests for exclusions be received after the date of this declaration, Lead Plaintiff will address them in the reply in support of the instant motions.

### Lead Counsel's Fee and Expense Request is Justified

47.     Lead Counsel has worked diligently to achieve the Settlement, expending 520.65 hours to date for a total lodestar value of $417,967.50. *See* Ex. 2, Rosen Fee Decl. at ¶¶ 4-5. The lodestar multiplier for the requested fee is 1.79. The rates Lead Counsel billed for their attorneys are comparable to peer plaintiff and defense firms litigating matters of similar magnitude. *See* Ex. 4, Peer Firms Billing Rates.

48.     Lead Counsel spent a total of $33,376.08 in unreimbursed expenses in connection with the prosecution of this Action, which is less than the $45,000 amount described in the Long Notice, Postcard Notice, and the Summary Notice of Pendency and Proposed Class Action Settlement. Lead Counsel has not received any compensation from this case during the litigation.

49.     From the outset, Lead Counsel understood it was embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would potentially require. In undertaking that responsibility, Lead Counsel ensured that sufficient resources were dedicated to the Action and that funds were available to

14

compensate staff and to cover the expenses the case would require. With an average lag time of several years for a case like this to conclude, the financial burden on Lead Counsel was greater than those for a firm paid on an ongoing basis.

50.    Lead Counsel's work in this Action included, among other things: (a) investigating, researching and filing the initial complaint: (b) moving for and securing Ms. Bell's appointment as Lead Plaintiff; (c) conducting a thorough investigation, including: analyzing SEC filings, press releases, analyst reports, and other publicly-available records concerning Kanzhun; retaining and overseeing a private investigator in China to locate and interview former Kanzhun employees and potentially relevant third parties; researching and analyzing sources in the Chinese media and Chinese regulatory filings; and sending a Freedom of Information Act request to the SEC; (d) drafting the operative Complaint in light of additional evidence discovered from the aforementioned investigation; (e) researching arguments and counter-arguments concerning Kanzhun's motion to dismiss and opposed the motion to dismiss; (f) researching and drafting a motion to strike certain exhibits from Kanzhun's motion to dismiss and a reply in further support of the motion to strike; (g) retaining and consulting with an economic expert concerning damages; (h) participating in a mediation with Mr. Melnick, which included the preparation and exchanging of detailed mediation statements; (i) drafting papers in

15

support of preliminary approval of the Settlement; and (j) supervising the Claims Administrator on the claims administration process.

51.    Lead Counsel's work will not end with the filing of the instant motions or the Court's approval of the Settlement. Lead Counsel will spend more time and resources drafting and filing the replies in support of its motions, preparing for and appearing at the Settlement Hearing scheduled for March 1, 2023, assisting Settlement Class Members with their claims, overseeing and supervising the claims process and distribution of the Settlement Fund to Settlement Class Members, and responding to Settlement Class Members' inquiries.

### The Requested Award to Lead Plaintiff is Justified

52.    Lead Plaintiff has devoted a substantial amount of time leading this Action on behalf of the Settlement Class. Throughout this litigation, Lead Plaintiff was available to Lead Counsel as needed and performed her duties with attentiveness and diligence. Lead Plaintiff communicated with Lead Counsel regarding the posture and progress of the case, as well as litigation strategy, the settlement terms, and contributed to the successful resolution of this action.

53.    Accordingly, Lead Plaintiff requests a modest award of $5,000 to compensate her for the time serving as a representative plaintiff and to encourage others to come forward in similar cases in the future.

16

I declare under penalty of perjury that the foregoing is true and correct.


Executed on February 1, 2023.

/s/ Laurence Rosen
Laurence Rosen

17

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Laurence Rosen
Laurence Rosen