## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEYLA D. BELL, Individually and on behalf of all others similarly situated,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>KANZHUN LIMITED, PENG ZHAO, YU ZHANG, XU CHEN, and TAO ZHANG,<br><br>　　　Defendants. | Case No: 2:21-cv-13543- MAH<br><br>CLASS ACTION<br><br>**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR DISTRIBUTION OF CLASS ACTION SETTLEMENT FUND**<br><br>Motion Day: April 1, 2024 |

# TABLE OF CONTENTS

I.    BACKGROUND ..................................................................................................1

II.   DETERMINATION OF AUTHORIZED CLAIMS ........................................2

  A.    Properly Documented Claims .....................................................................2

  B.    Deficient and Ineligible Claims..................................................................4

    1.   Inadequately Documented Claims ...........................................................4

    2.   Claims Rejected for Reasons Other than Inadequate Documentation ..........5

III.  PLANNED DISTRIBUTION OF THE NET SETTLEMENT FUND ...........6

IV.   RELEASE OF CLAIMS.................................................................................7

V.    RECORDS RETENTION AND DESTRUCTION .........................................8

VI.   CONCLUSION................................................................................................9

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hartman v. Powell*,
  2001 WL 410461 (D.C. Cir. Mar. 15, 2001) ..........................................................3

*In re Citigroup Inc. Sec. Litig.*,
  2014 WL 7399039 (S.D.N.Y. Dec. 29, 2014) ......................................................3

*In re Forterra Inc. Sec. Litig.*,
  2021 WL 3464255 (N.D. Tex. Aug. 4, 2021).......................................................7

*In re Friedman's, Inc. Sec. Litig.*,
  2009 WL 10671836 (N.D. Ga. July 23, 2009) ......................................................8

*In re Gypsum Antitrust Cases*,
  565 F.2d 1123 (9th Cir. 1977) .................................................................................3

*In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.*,
  2010 WL 11595033 (S.D.N.Y. Dec. 23, 2010) ......................................................8

*In re Miva, Inc.*,
  2015 WL 12834962 (M.D. Fla. Sept. 23, 2015).....................................................8

*In re Orthopedic Bone Screw Prod. Liab. Litig.*,
  246 F.3d 315 (3d Cir. 2001) ...................................................................................3

*In re Patriot National, Inc. Sec. Litig*,
  2021 WL 1040462 (S.D.N.Y. Mar. 18, 2021)...................................................7, 8

*Rihn v. Acadia Pharms. Inc.*,
  2018 WL 513448 (S.D. Cal. Jan. 22, 2018). .......................................................7

Keyla D. Bell ("Lead Plaintiff") respectfully submits this memorandum of law in support of her motion for entry of the [Proposed] Order Granting Distribution of Class Action Settlement Fund ("Class Distribution Order") in the above-captioned action (the "Action").[1]  If entered by the Court, the Class Distribution Order will, among other things: (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the Action; and (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court. The specifics of the proposed plan for distribution of the Net Settlement Fund are set forth in the accompanying Declaration of Margery Craig Concerning the Results of the Claims Administration Process ("Craig Declaration").

## I.    BACKGROUND

On November 10, 2022, the Court entered the Order Granting Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, (Dkt. No. 38) ("Preliminary Approval Order").  On April 5, 2023, the Court entered the Order Approving Plan of Allocation (Dkt. No. 52) and the Order and Final Judgment (Dkt. No. 54).

The Court-appointed Claims Administrator, Strategic Claims Services

---

[1] All capitalized terms herein, unless otherwise indicated, have the same meanings and definitions as given to them in the Stipulation of Settlement ("Stipulation"), dated November 4, 2022 (Dkt. No. 36).

1

("SCS"), has advised Lead Counsel that it has completed all analyses and accounting procedures in connection with the Claim Forms submitted by those persons who responded to the Notice, and has determined which of those persons are, subject to Court approval, Authorized Claimants.  *See* Craig Declaration at ¶¶6-7.

All that remains to complete the Settlement process is to distribute the Net Settlement Fund to the Authorized Claimants. Lead Counsel now respectfully requests that the Court authorize the distribution of the Net Settlement Fund.

## II.   DETERMINATION OF AUTHORIZED CLAIMS

Pursuant to the Preliminary Approval Order, all Claims were to be submitted to the Claims Administrator, online or postmarked no later February 8, 2023. Preliminary Approval Order ¶21(a). The Claims Administrator has now finalized its determination of which Claims are authorized and which are ineligible. Craig Declaration ¶¶6-7.

### A.   Properly Documented Claims

SCS identified 109 properly documented Claims. Craig Declaration ¶7(a). These valid claims represent Recognized Losses of $18,273,039.39. *Id.* Lead Plaintiff respectfully requests the Court approve payment of these Claims listed on Exhibit B to the Craig Declaration.

The Claims Administrator continued to receive Claims after the claims-filing deadline through May 5, 2023. Craig Declaration ¶6. Although the Claims

2

Administrator attempted to accept all eligible claims submitted after the deadline, there must be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place. *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, a cutoff date is essential and at some point the matter must be terminated.") (citation omitted); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001). Acceptance of additional Claims received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution. Accordingly, the Claims Administrator imposed a cut-off date of May 5, 2023. Craig Decaration ¶6 at fn.3.

Therefore Lead Plaintiff respectfully requests that the Court reject as untimely any Claims received after May 5, 2023 and any responses to deficiency and/or rejection notices received after September 21, 2023. Craig Decaration ¶¶6, 8. "Drawing a line is essential to achieve certainty and finality in such a large class action." *Hartman v. Powell*, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum*, 565 F.2d at 1127).

## B.    Deficient and Ineligible Claims

### 1.  Inadequately Documented Claims

To be eligible for a payment from the proceeds of the Settlement, a Class Member must submit a Claim Form with adequate supporting documentation.  *See* Preliminary Approval Order ¶21(b).  As detailed in the Preliminary Approval Order, proper documentation may consist of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional and holding information found in a broker confirmation slip or account statement, or such other documentation as is deemed adequate by the Claims Administrator or Lead Counsel.  *Id.*

SCS initially identified 95 inadequately documented Claims. Craig Declaration ¶7(b). When Claims were inadequately documented, SCS sent Claimants deficiency notices advising them of the deficiency, and they were given the opportunity to cure the deficiency.  *Id.*  Of the 95 Claims initially identified as deficient, one claim has been successfully cured and is now considered valid. *Id.* The remaining 94 deficient Claimants either did not respond to the deficiency notice or responded with insufficient documentation. *Id.* These Claimants were sent a rejection notice explaining the reason(s) for their rejection. *Id.*; Exhibit C to Craig Declaration. None of the 94 deficient Claimants have objected or contested SCS's rejection notice. Craig Declaration ¶7(b).

The Court approved the content of the Notice when issuing the Preliminary Approval Order and mandated the documentation necessary to the submission of a valid Claim. *See* Preliminary Approval Order at ¶¶9, 21(b). Each of the 94 Claimants have failed to provide proper documentation and the Court should, therefore, accept the Claim Administrator's determination and reject these inadequate Claims listed on Exhibit D to the Craig Declaration.

**2. Claims Rejected for Reasons Other than Inadequate Documentation**

In addition to the 94 inadequately documented Claims, SCS identified 2,017 Claims that it has recommended for complete rejection. Craig Declaration ¶7(c). Included in this category are: (i) claims with no Recognized Losses; (ii) claims with Kanzhun Limited ("Kanhzun") American Depositary Shares ("ADSs") purchased outside of the Settlement Class Period; (iii) claims with Kanzhun ADSs that were not purchased or otherwise acquired, but were received, granted by gift, inheritance, or operation of law; (iv) claims with shares sold short; (v) duplicate claims; (vi) claims that are fraudulent; and (vii) claims withdrawn by filing entity. *Id*. Each of these Claimants, listed on Exhibit E to the Craig Declaration, have been advised of SCS's determination. *Id*.; Exhibit F to Craig Declaration. To date, none of the ineligible Claimants have contested SCS's determination. *Id.* Accordingly, Lead Plaintiff respectfully requests that the Court accept SCS's determination and reject the Claims listed on Exhibit E to the Craig Declaration.

### III.    PLANNED DISTRIBUTION OF THE NET SETTLEMENT FUND

Consistent with the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Authorized Claimants on a *pro rata* basis whose distribution payments calculate to $10.00 or more (the "Initial Distribution"). Craig Declaration ¶9(a). Based on the substantial experience of Lead Counsel and SCS in similar distributions, it can be expected that a certain number of the payments to be distributed to Class Members who filed valid Claims will not be cashed promptly. To encourage Authorized Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to unpaid distributions, Lead Counsel and SCS propose that all the distribution checks bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." *Id.* ¶9(b).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution checks.  If, however, after six (6) months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a redistribution if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so.  During the redistribution, any amounts remaining in the Net Settlement Fund

after the Initial Distribution, after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, will be distributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the second distribution. *Id.* ¶9(c).

The Stipulation provides that any funds that remain in the Net Settlement Fund after a redistribution shall be donated to an appropriate non-profit organization(s). Stipulation, ¶6.6. Lead Plaintiff requests that any such remaining balance be donated to the Investor Protection Trust, a non-profit organization dedicated to investor education. Similar distribution plans, including the selection of the Investor Protection Trust as a *cy pres* recipient, have been repeatedly approved by courts in other securities class actions. *See, e.g.*, *In re Patriot National, Inc. Sec. Litig,*, 2021 WL 1040462, at *1-2 (S.D.N.Y. Mar. 18, 2021); *In re Forterra Inc. Sec. Litig.*, 2021 WL 3464255, at *1-2 (N.D. Tex. Aug. 4, 2021); *Rihn v. Acadia Pharms. Inc.*, No. 15-CV-00575 BTM-DHB, 2018 WL 513448, at *4 (S.D. Cal. Jan. 22, 2018).

## IV.    RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the

administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, Lead Plaintiff respectfully requests the Court to release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of such involvement and bar all Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amounts allocated to them pursuant to the terms of the Distribution Order. *See In re Patriot National*, 2021 WL 1040462, at *2; *In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.*, 2010 WL 11595033 at *2 (S.D.N.Y. Dec. 23, 2010).[2]

## V.    RECORDS RETENTION AND DESTRUCTION

Lead Plaintiff respectfully requests the Court order that SCS may discard paper or hard copies of claims and all supporting documents no less than one year

---

[2] *See also In re Miva, Inc.*, 2015 WL 12834962, at *2 (M.D. Fla. Sept. 23, 2015); *In re Friedman's, Inc. Sec. Litig.*, 2009 WL 10671836, at *2 (N.D. Ga. July 23, 2009).

after distribution of the Net Settlement Fund to Authorized Claimants, and electronic copies of the same no less than one year after all funds from the Net Settlement Fund have been distributed. This is SCS's customary document retention period and prevents the Settlement Class from incurring additional storage expenses and related fees. Craig Declaration ¶9(e).

## VI.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests the Court enter the Class Distribution Order submitted herewith, so that Settlement Class Members who submitted valid claims may receive their *pro rata* share of the Net Settlement Fund.

Dated: March 4, 2024                     Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

*/s/ Laurence M. Rosen*
Laurence Rosen
Jing Chen
One Gateway Center
Suite 2600
Newark, NJ 07102
Tel:  (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com
            jchen@rosenlegal.com

9

Erica L. Stone
Phillip Kim (admitted *Pro Hac Vice*)
275 Madison Ave, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: estone@rosenlegal.com
          pkim@rosenlegal.com

*Lead Counsel for Lead Plaintiff*

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that March 4, 2024 a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Laurence M. Rosen*
Laurence M. Rosen